CC-2000-474                                                          1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Angel Rafael Virella Archilla<br>      Recurrido<br><br>              v.<br><br>Procuradora Especial de Relaciones<br>de Familia<br>      Recurrente | Certiorari<br><br>2001 TSPR 114<br><br>154 DPR _____ |

Número del Caso: CC-2000-474


Fecha: 7/agosto/2001


Tribunal de Circuito de Apelaciones:
                              Circuito Regional II


Juez Ponente:
                              Hon. Jeannette Ramos Buonomo



Oficina del Procurador General
                              Lcdo. Héctor Clemente Delgado
                              Procurador General Auxiliar

                              Lcda. María del P. Aguirre Vázquez
                              Procuradora General Auxiliar

Abogado de la Parte Recurrida:
                              Lcdo. Aníbal Santos Sifonte


Materia: Adopción


      Este documento constituye un documento oficial del Tribunal Supremo que está
      sujeto a los cambios y correcciones del proceso de compilación y publicación
      oficial de las decisiones del Tribunal. Su distribución electrónica se hace
      como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Angel Rafael Virella Archilla

    Recurrido

    v.

                         CC-2000-474

Procuradora Especial
de Relaciones de Familia

    Recurrente

Opinión del Tribunal emitida por el Juez Asociado señor Corrada del Río

San Juan, Puerto Rico, a 7 de agosto de 2001.

I

    Karla L. Virella Sierra (en adelante, Karla o la menor) nació el 26 de noviembre de 1983, hija de Eric N. Virella Santos (en adelante, el padre biológico) y Brunilda E. Sierra Torres (en adelante, la madre biológica). Los abuelos paternos de la menor son el recurrido, el Sr. Angel R. Virella Archilla (en adelante, el recurrido o abuelo) y la Sra. Carmen L. Santos Sifonte (en adelante, Sra. Santos o la abuela).

    Al ésta nacer, los padres de Karla residieron con los abuelos paternos de la menor durante un mes, en Guaynabo. Posteriormente se mudaron a Bayamón,

llevándose a la infante que tenía aproximadamente seis (6) semanas de nacida. Residieron en dicho pueblo durante dos (2) meses aproximadamente, hasta que finalmente los padres de Karla se separaron.[1] Tras la separación, la madre biológica y la menor residieron brevemente con la familia materna en Morovis. Luego, a principios de 1984, pasaron a residir al hogar de los abuelos paternos de la menor, en Villa Caparra, Guaynabo. Cuando Karla apenas contaba con ocho meses de edad, sus padres se divorciaron.[2] No obstante, el padre biológico de la menor mantuvo contacto frecuente con Karla y la madre de ésta, pues visitaba regularmente a sus padres (es decir, los abuelos paternos) en su residencia de Villa Caparra, Guaynabo.

Cuando la menor tenía aproximadamente cuatro (4) años, en 1987, sus padres se reconciliaron. De inmediato, comenzaron a vivir consensualmente, y procrearon a otro hijo en común que aún vive con ellos. Subsiguientemente, se mudaron a un apartamento ubicado en la residencia de los abuelos maternos de la menor, en Morovis. La menor, sin embargo, permaneció conviviendo con sus abuelos paternos, quienes se habían responsabilizado de su crianza, protección, educación y manutención. Surge del expediente que éstos han desarrollado fuertes lazos afectivos con la menor, interactuando como sus padres. Karla, a su vez, considera a sus abuelos paternos como sus padres.[3]

Por otro lado, surge del expediente que Karla identifica a sus padres biológicos sin dificultad y habla libremente sobre sus tres hermanos, a saber: Eric Gabriel, Eric Noel y Ricardo, de 11, 8 y 7 años de edad respectivamente.[4] Karla se relaciona frecuentemente con éstos. También se relaciona diariamente con sus padres biológicos, quienes visitan su hogar.[5]

Karla afirma haber vivido con sus abuelos "toda su vida", a quienes considera sus "padres" por ser quienes la han criado, educado, y mantenido. A sus progenitores los distingue como "papito" y "mamita", y ocasionalmente les llama "Eric" y "Brunilda". Expresa además mantener una estrecha relación con su madre biológica, pero no así con su padre biológico.

Según las determinaciones de hecho efectuadas por el Tribunal de Primera Instancia (TPI), el padre biológico de Karla manifestó al tribunal que no siente ser su "padre", y dice que para ella, él es "como cualquier otra persona", ya que desde que nació no ha estado con ella, ni le ha brindado el cariño que debió darle, y admitió que no tiene vínculos con ella desde que nació. Por su parte, el TPI determinó que la menor sólo reconoce al abuelo como

---

[1] Véase Apéndice, p. 69.

[2] La pareja contrajo matrimonio el 7 de abril de 1983. Se divorció, mediante consentimiento mutuo, el 13 de agosto de 1984. Según surge del Informe Social Pericial preparado por el Departamento de la Familia, el padre biológico de Karla contrajo segundas nupcias poco tiempo luego de divorciado con la Sra. Nidia Ortiz, con quien procreó dos (2) hijos: Eric Noel y Ricardo. Su segundo divorcio fue efectivo en 1994. Apéndice, p. 73.

[3] Apéndice, p. 70.

[4] Como indicáramos anteriormente, el padre biológico de Karla tuvo dos (2) hijos en otro matrimonio.

[5] Apéndice, p. 72.

su "padre", refiriéndose a su padre biológico simplemente como "Eric" o "papito", para distinguirlo.[6] En cambio, la madre biológica de Karla dijo que la ama y expresa tener una relación muy estrecha con su hija. Reconoció, a su vez, que los abuelos paternos de la menor han sido responsables de cuidarla y protegerla, prácticamente desde su infancia.[7]

El 1 de agosto de 1998, los abuelos paternos de Karla presentaron una petición de adopción ante el TPI.[8] De acuerdo con las determinaciones de hechos de la sentencia del tribunal, Karla declaró en corte abierta que la idea de la adopción fue iniciativa de ella.[9] Para esa fecha contaba con 16 años de edad. La petición presentada fue juramentada **conjuntamente por el abuelo y la abuela** de Karla.[10]

El padre biológico de Karla no objetó la adopción **conjunta por ambos abuelos paternos** y, por tanto, dio su consentimiento sin reserva alguna. A esos efectos, firmó una declaración jurada el 1 de agosto de 1998.[11]

La madre biológica de Karla, por su parte, no se opuso a la posición asumida por el padre biológico de renunciar a sus derechos de patria potestad y consentir a la adopción. Sin embargo, según surge del Informe Social Pericial preparado por el Departamento de la Familia, ésta se opuso a la **adopción conjunta** de los abuelos paternos si ello conlleva la privación de su patria potestad y custodia sobre la menor. Por tanto, consiente solamente a la adopción **individual** del abuelo paterno. Se opuso a la adopción conjuta por ambos abuelos paternos debido a que desea que la menor conserve su segundo apellido ("Sierra") y quiere,

---

[6] Apéndice, p. 36.

[7] Apéndice, p. 74.

[8] Según surge de las determinaciones de hecho del TPI, el abuelo de Karla reside hace más de veinte (20) años en el sector de Villa Caparra, de Guaynabo. Además, se desempeña profesionalmente como asesor de una corporación, y se ha destacado también como consultor para la banca comercial, y para entidades de ahorro y crédito en la Isla. Éste tiene 63 años de edad, posee un bachillerato en artes de la Universidad de Puerto Rico (UPR), y cuenta con ingresos mensuales fijos de $846.00 por concepto de seguro social y aproximadamente $1,510.00 de ingresos mensuales adicionales por sus servicios de consultoría. La abuela de Karla, quien también posee un bachillerato de la UPR, tiene ingresos fijos mensuales de $640 por concepto de seguro social, y $607.00 por razón de pensión de retiro del magisterio. Éstos tienen más de 42 años de casados, y procrearon tres hijos en su matrimonio, todos mayores de edad e independientes. Apéndice, pág. 35.

[9] Apéndice, pág. 37.

[10] Aparentemente, en un principio el abuelo paterno, aquí recurrido, pretendió adoptar a la menor **individualmente**. A esos efectos, los padres biológicos de la menor autorizaron esa iniciativa mediante declaración jurada, en **mayo** de 1998. Sin embargo, la petición al tribunal presentada el 1 de **agosto** de 1998 incluía **a ambos abuelos** paternos como peticionarios, adoptando **conjuntamente**. Apéndice, p. 75. Posteriormente, como veremos, *infra,* la petición fue finalmente enmendada y el abuelo aparece actualmente como adoptante individual.

[11] *Íd.*

a su vez, retener la patria potestad y custodia legal sobre la menor "en caso de que sus abuelos no puedan continuar cuidándola en el futuro".[12] Es decir, la madre no tenía objeción en que el abuelo paterno adopte a Karla, siempre y cuando lo haga como adoptante individual. Así, pues, hasta la fecha no ha accedido a la adopción *conjunta* de los abuelos.[13]

Al oponerse la madre biológica de Karla, la Petición (*ex parte*) de adopción se enmendó para que apareciese el abuelo de Karla como adoptante *individualmente*.[14] La Petición, así enmendada, se presentó en el Tribunal de Primera Instancia el 28 de agosto de 1998.

En la vista de primera comparecencia de la adopción, celebrada el 7 de octubre de 1998, el Ministerio Público, representado por la Procuradora Especial de Relaciones de Familia (en adelante, recurrente) objetó verbalmente a que la adopción individual por parte del abuelo paterno se llevase a cabo, por entender que sería contraria a lo dispuesto en el artículo 133 del Código Civil de Puerto Rico, según enmendado, 31 L.P.R.A. sec. 534. El TPI ordenó a la recurrente que sometiera sus argumentos por escrito. Ordenó, además, al Departamento de la Familia a presentar el Informe Pericial Social que requiere la ley.

Subsiguientemente, el 27 de octubre de 1998, la recurrente compareció ante el TPI para presentar un escrito oponiéndose a la adopción, al cual se opuso el abuelo recurrido. Asimismo, el Departamento de la Familia presentó su correspondiente Informe Social Pericial. En el informe se indicó que pese a que Karla considera a los abuelos paternos como sus "padres", la adopción individual del abuelo sería "atípica", ya que de ser autorizada, la madre biológica conservaría los derechos que acompañan la patria potestad. Añadió que esta situación resultaría "injusta" para la abuela, ya que Karla considera que ella, y no su primogenitora, es su "madre". Por lo tanto, el Departamento de la Familia hizo una recomendación de adopción por su abuelo "no favorable". Empero, se indicó en el informe que "**[l]a adopción se recomienda favorablemente si se produce tanto por el peticionario como por su esposa [la abuela de Karla]**".[15]

En la vista en su fondo, celebrada el 28 de diciembre de 1998, la recurrente, en lugar de oponerse a la adopción, recomendó al tribunal que diera por enmendadas las alegaciones y concediera la adopción, de modo conjunto, a los abuelos, privando involuntariamente a la madre de la patria potestad.

Finalmente, pese a la recomendación de la recurrente, el 4 de marzo de 1999, el foro de instancia dictó sentencia[16] **autorizando la adopción individual por el abuelo y, a su vez,**

---

[12] Apéndice, p. 74 y 76.

[13] Karla desea ser adoptada por sus abuelos paternos (ambos) porque considera que son sus padres, a pesar de la objeción de su madre biológica. Sin embargo, cuando le informaron que de todas formas podría ser adoptada por su abuelo, permaneciendo como hija de su progenitora, estuvo de acuerdo "porque así [se] lo explicaron". Apéndice, pág. 73.

[14] Apéndice, pág. 46.

[15] Apéndice, pág. 76. (Énfasis suplido.)

[16] Se archivó en autos copia de la notificación de la sentencia el 28 de mayo de 1999. Apéndice, pág. 32.

**la retención de la patria potestad por parte de la madre de la menor**. El TPI justificó su fallo citando el último párrafo del artículo 133 del Código Civil, *supra*, e indicando que no hay en éste prohibición expresa a los efectos de que un adoptante casado adopte individualmente, particularmente en vista de los hechos del caso de autos:

> Esta [*sic*] claro en dicho artículo de ley que la norma vigente es que una persona individualmente puede adoptar y en ninguna parte de dicho artículo prohibe [*sic*] expresamente la adopción individual cuando el adoptante este [*sic*] casado o casada. Lo que dicho artículo persigue es que el adoptante casado que adopte tenga el consentimiento del cónyuge, como en este caso que es la abuela materna y madre mental y emocional de la adoptando, pues de lo contrario no tendría un hogar emocionalmente seguro como lo tendría sin duda alguna la adoptando y como lo ha tenido en sus 15 años que lleva residiendo con el peticionario y su esposa.[17]

Por lo tanto, concluyó el TPI que el último párrafo del artículo 133 del Código Civil provee discreción al tribunal para conceder la adopción de la menor, de acuerdo a las circunstancias particulares del caso. Además, explicó que el propósito de la ley es hacer de la adopción un proceso expedito y flexible, y que siempre debe procurarse el bienestar y la conveniencia del adoptando.[18] Asimismo el juez de instancia añadió que en su opinión, "la adopción de un menor no debe dejarse al **arbitrio único** de un estatuto sino a la evaluación que nuestros tribunales puedan hacer de si es o no beneficiosa la adopción para dicho menor".[19] Añadió además el juez que tenía "la certeza moral y convicción de que la adopción solicitada debe concederse no solamente por la prueba desfilada y requisitos estatutarios, sino también porque **no hay razón moral ni social para denegarla**".[20]

En conclusión, el TPI declaró con lugar la petición de adopción del abuelo individualmente. Resolvió, además, que la patria potestad sería compartida entre el abuelo y la madre de Karla; empero le concedió la custodia legal al abuelo para conformar "la realidad de facto con la realidad legal".[21]

Inconforme con la determinación del foro de instancia, la recurrente presentó recurso de apelación ante el Tribunal de Circuito de Apelaciones (TCA) el 23 de julio de 1999.[22] El foro apelativo, mediante sentencia de 28 de abril de 2000, confirmó la sentencia recurrida.[23]

---

[17] Apéndice, pág. 41.

[18] Apéndice, pp. 41-44.

[19] Apéndice, pág. 43. (Honorable Carlos de J. Rivera Marrero, Juez Superior).

[20] *Íd*. (Énfasis suplido.)

[21] Apéndice, pp. 44-45.

[22] La regla general es que los procedimientos de adopción son de naturaleza *ex parte*, esto es, no contenciosos. Sin embargo, en ocasiones el procedimiento puede tornarse contencioso, como por ejemplo, cuando luego de emitido el decreto final del tribunal de instancia autorizando la adopción, alguna parte interesada acude en revisión apelativa. Así, pues, la Ley Núm. 9 de 19 de enero de 1995, en su artículo 15 dispone que "[c]ualquier parte adversamente afectada por el decreto de adopción podrá recurrir en **apelación** al Tribunal de Circuito de Apelaciones de Puerto Rico". 32 L.P.R.A. sec. 2699n. (Énfasis suplido.) Siendo el recurso de "apelación" el provisto por ley, son de particular

Según surge de su sentencia, el TCA reconoce que si bien el artículo 133 del Código Civil establece como regla general la adopción conjunta, y que sólo como excepción el estatuto autoriza la adopción individual, no obstante considera que la lista de excepciones del artículo no es una enumeración taxativa sino ilustrativa. El TCA entiende además que el último párrafo de dicho artículo le concede discreción a los tribunales para resolver los casos de adopción flexiblemente, procurando siempre el bienestar y la conveniencia del menor.

Inconforme, la recurrente acude ante nos mediante *certiorari* exponiendo el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Circuito de Apelaciones, Circuito Regional II, al permitir mediante una impermisible [*sic*] interpretación expansiva de la norma jurídica aplicable, que una persona casada con otra que no tiene ningún impedimento legal pueda adoptar individualmente a una menor de edad.

El 25 de agosto de 2000, expedimos en reconsideración el auto solicitado. El 8 de noviembre de 2000, compareció el Procurador General en representación de la parte recurrente. El 9 de enero de 2001, emitimos resolución concediéndole un término de veinte (20) días a la parte recurrida para que presentase su correspondiente alegato. Se le apercibió, además, que de no recibirse su alegato dentro de dicho término, el caso quedaría sometido sin el beneficio de su comparecencia. Transcurrido el plazo sin comparecer, resolvemos sin más.[24]

II

La cuestión a resolver en el caso de autos ciertamente es novel; a saber: si las excepciones a la norma de adopción conjunta para los cónyuges establecidas en el artículo 133 del Código Civil, *supra*, constituyen una enumeración taxativa o meramente ilustrativa.

Mediante la Ley Núm. 8 de 19 de enero de 1995, la Asamblea Legislativa enmendó el Capítulo V, Título VI,[25] del Libro Primero del Código Civil, que regula los aspectos **sustantivos** de la Adopción en Puerto Rico. En lo pertinente, se aprobó el artículo 133, disponiendo que:

> Nadie podrá ser adoptado por más de una persona, salvo que los adoptantes estuvieren casados entre sí, **en cuyo caso** se **deberá adoptar conjuntamente.**
>
> Un **cónyuge** podrá adoptar **individualmente** en cualquiera de los siguientes casos:

---

aplicación las disposiciones pertinentes sobre el recurso de apelación en la Ley de la Judicatura de 1994, 4 L.P.R.A. ss. 22i y 22k. *Véase además* la Resolución del TCA de 30 de agosto de 1999 (Apéndice, p. 137), la "Moción en Cumplimiento de Orden de Mostrar Causa" (Apéndice, pp. 142-45), y la Resolución del TCA de 9 de noviembre de 1999 (Apéndice, p. 150).

[23] El panel estuvo integrado por la Juez Ramos Buonomo (como juez ponente), la Juez Cotto Vives, y el Juez Presidente Sánchez Martínez, quien emitió un voto disidente (Apéndice, p. 23).

[24] El archivo en autos de la copia de la notificación de dicha resolución se efectuó el 10 de enero de 2001, según lo certifica la Secretaria de este Tribunal.

[25] El Título VI del Libro Primero del Código Civil trata sobre la Paternidad y Filiación de las Personas. Cabe señalar, además, que La **Ley Núm. 9**, de igual fecha, enmendó la Ley de Procedimientos Legales Especiales, en cuanto a los artículos correspondientes **al procedimiento** sobre la adopción. 32 L.P.R.A. SS. 2699-2699s (Supl. 1998).

(1)     Cuando desee adoptar al hijo menor de edad del otro cónyuge.

(2)     Cuando esté separado de su cónyuge, por lo menos durante los dos (2) meses anteriores a la fecha de la presentación de la petición, en cuyo caso habrá de notificarse dicha solicitud al otro cónyuge.

La subsiguiente reconciliación de los cónyuges no impedirá el derecho del peticionario a adoptar individualmente, excepto que por acuerdo de ambos, el matrimonio podrá adoptar conjuntamente si así lo decretare el tribunal, considerando siempre como eje central el bienestar y conveniencia del adoptando.

(3)     Cuando por decreto judicial el cónyuge del adoptante tenga restringida su capacidad jurídica, mientras dure dicha restricción, en cuyo caso habrá de notificarse dicha solicitud al otro cónyuge.

El tribunal **tendrá discreción** para resolver situaciones **como las dispuestas en esta sección, teniendo siempre como guía para su decisión el bienestar y conveniencia del menor**. 31 L.P.R.A. sec. 534.

### III

La adopción es un acto jurídico solemne mediante el cual se sustituye totalmente el parentesco familiar biológico o natural de una persona por otro, en un procedimiento judicial rigurosamente reglamentado por el Código Civil (en su dimensión sustantiva), y el Código de Enjuiciamiento Civil (en su dimensión procesal). *Feliciano Suárez*, Ex parte, 117 D.P.R. 402 (1986).

La institución de la adopción como está reglamentada en Puerto Rico "es producto de nuestra autoctonía". Ex parte *J.A.A.*, 104 D.P.R. 551, 556 (1976). La misma se basa "en legislación de avanzada, con la cual ha de andar a la par la jurisprudencia de este Tribunal". *Íd*. Reiteradamente hemos reseñado que nuestra legislación sobre la adopción está entre las más avanzadas y liberales del mundo moderno. *Íd*., pág. 555.

En la actualidad, la figura de la adopción cumple varios fines sociales de fundamental importancia para nuestra sociedad contemporánea, pero principalmente el propósito de darle a los niños sin padres la oportunidad de criarse en un hogar donde los puedan atender debidamente, y facilitar a los padres sin hijos la oportunidad de tenerlos y asegurar así la continuidad de su familia. *M.J.C.A., menor v. J.L.E.M., menor*, 124 D.P.R. 910, 916 y 922 (1989); *Feliciano Suárez*, Ex parte, *supra*, pág. 409.[26] Por otro lado, la adopción debe servir el propósito de proteger al menor, cuidando siempre que no se le separe indebidamente de sus padres, cuando puedan permanecer con ellos, si se les da la debida orientación y ayuda. Ex parte *J.A.A.*, *supra*, pág. 557. Sobre toda consideración, sin embargo, la decisión sobre si se autoriza o no la adopción descansa principalmente sobre la premisa de la conveniencia y bienestar del menor. *Íd*., pág. 559.

---

[26] Para un resumen del desarrollo histórico de la adopción, véanse *M.J.C.A., menor v. J.L.E.M., supra*, pp. 916-919; *Feliciano Suárez*, Ex parte, *supra*, pp. 407-412; *Rivera Coll v. Tribunal Superior*, 103 D.P.R. 325, 327-330

Como regla general, mediante la adopción se extingue todo vínculo jurídico entre el adoptado y su familia biológica o adoptiva anterior, de modo que una vez la adopción es decretada, el adoptado es considerado para todos los efectos legales como hijo del adoptante con todos los derechos, deberes y obligaciones que le corresponden por ley. Art. 137 del Código Civil, 31 L.P.R.A. sec. 538.[27] Tras la adopción, el adoptado adquirirá los apellidos del adoptante o de los cónyuges adoptantes, salvo que el tribunal, por causa justificada, determine otra cosa. Art. 138 del Código Civil, 31 L.P.R.A. sec. 539.

En el 1995, se aprobó legislación para enmendar la figura de la adopción en Puerto Rico, tanto en su aspecto procesal como sustantivo. La Ley Núm. 9 de 19 de enero de 1995, como indicáramos anteriormente, enmendó las disposiciones de la Ley de Procedimientos Legales Especiales (antes Código de Enjuiciamiento Civil) que regulan los aspectos procesales de la adopción. Véase 32 L.P.R.A. sec. 2639 *et seq*. Igualmente, la Ley Núm. 8 de 19 de enero de 1995 tuvo el propósito de enmendar el articulado sobre adopción en el Código Civil, que regula la adopción en su dimensión

---

(1975); Ex parte *Warren*, 92 D.P.R. 295, 302 (1965); *Valladares de Sabater v. Rivera Lazú*, 89 D.P.R. 254, 258-259 (1963).

[27] No obstante, hemos establecido una excepción a dicha regla. A saber, cuando la petición de adopción sea hecha **individualmente**, es decir, el adoptante es **una sola persona** – caso contemplado por la primera oración del Art. 133 del Código Civil vigente, *supra*– y, a su vez, ésta no sea cónyuge del padre o la madre del niño, "el tribunal, en vista de las circunstancias específicas de cada caso, deberá decidir si la ruptura del parentesco biológico del adoptado opera respecto de ambas líneas, la paterna y la materna, o respecto de una sola". Ex parte *J.A.A.*, *supra*, pág. 558. Ello se debe a que, en estos caso de adopción individual, el Código Civil no impide que el adoptado, al adquirir un padre adoptivo, siga vinculado en su parentesco natural con su madre biológica, y viceversa. *Íd.*

sustantiva. Véase 31 L.P.R.A. sec. 531 *et seq*.

Siendo nuestra ley de adopción una creación autóctona, se impone la necesidad de siempre buscar la intención legislativa, para poder evaluar la determinación de autorizar o no autorizar una adopción conforme a los principios generales que inspiran la ley. Ex parte *J.A.A.*, *supra*, pág. 556.

El propósito principal de las enmiendas a las disposiciones del Código Civil en materia de adopción fue "flexibilizarlas". Véase Exposición de Motivos, Ley Núm. 8 de 19 enero de 1995, Leyes de Puerto Rico, Parte 1, pág. 47.[28] Es decir, se adoptó "una de las legislaciones **más avanzadas y liberales** de todos los países occidentales en materia de adopción siendo su espíritu claramente autóctono, ajustado a la realidad de la vida actual de la sociedad puertorriqueña, y protector de bienestar y conveniencia del adoptando". *Íd*. (Énfasis suplido.)

Cabe señalar además, que en Puerto Rico rige "el principio de que los estatutos sobre adopción deben ser interpretados liberalmente, a favor del adoptado". *Rivera Coll v. Tribunal Superior, supra*, pág. 331; Ex parte *Ortiz y Lluberas*, 42 D.P.R. 350, 356 (1931). Sin embargo, hemos sido enfáticos advirtiendo que "la liberalidad en la interpretación no puede conducirnos a violentar la intención legislativa, ni a consagrar absurdos". *Rivera Coll v. Tribunal Superior, supra*, pág. 331. Es decir, que "[e]n aras de la liberalidad no podemos ir más allá de la ley". *Íd*.

IV

Es norma establecida y reiterada de este Tribunal que **los requisitos sustantivos para cualificar como adoptante son jurisdiccionales, por lo que el incumplimiento de uno solo de ellos priva de jurisdicción al Tribunal**. *Pérez, Román v. Proc. Esp. Rel. de Fam.*, res. el 27 de abril de 1999, 148 D.P.R. \_\_, 99 T.S.P.R. 64, 99 J.T.S. 70, pág. 960; *M.J.C.A., menor v. J.L.E.M., supra*, pág. 921; Ex parte *Warren*, *supra*.

---

[28] Asimismo, en su dimensión **procesal**, las enmiendas a la Ley de Procedimientos Legales Especiales (antes Código de Enjuiciamiento Civil) que impuso la Ley Núm. 9 de 19 de enero de 1995 tuvo idéntico propósito:

> La Asamblea Legislativa entiende que es de rigor **ampliar y facilitar** . . . la utilización de la institución de la adopción como mecanismo para lograr de forma óptima que los menores e incapacitados puedan encontrar un hogar . . . .
> De esta forma es mandatorio el [*sic*] **expeditar y flexibilizar** este mecanismo de forma tal que pueda ser utilizado **más ampliamente**, y **de forma más rápida**, por personas que deseen acoger como padres en el seno de su hogar a menores e incapacitados en estado de desamparo y abandono.
> . . . .
> Siendo lo anterior la política pública del Estado se persigue mediante **la agilización** del proceso de adopción, haciéndolo a tono con la realidad actual de nuestra sociedad donde la proliferación de niños en estado de abandono, maltrato y desamparo va en aumento día a día . . . . Exposición de Motivos, Ley Núm. 9 de 19 de enero de 1995, Leyes de Puerto Rico, Parte 1, pág. 61. (Énfasis suplido.)

Ahora bien, el artículo 133 del Código Civil, *supra*, establece dos (2) clases de adopción, conforme al número de adoptantes: (1) la adopción individual, o sea, por una sola persona (*i.e.*, requisito de la unidad en la adopción[29]); y (2) la adopción conjunta, es decir, la efectuada por los cónyuges.[30] Debido a que los requisitos sustantivos para cualificar como adoptantes son jurisdiccionales, los tribunales deben estar atentos a qué tipo de adopción se trata, de modo que si la petición de adopción la presenta una pareja, ésta debe estar casada para que el tribunal adquiera jurisdicción. En cambio, si la presenta una sola persona, ésta no puede estar casada, como regla general.[31] En otras palabras, las personas solteras sólo pueden adoptar individualmente, y las personas casadas deberán adoptar conjuntamente, salvo en tres (3) situaciones específicamente previstas por el Art. 133 del Código Civil, *supra*. Sencillamente, así lo quiso el legislador. Por tanto, los tribunales no tienen discreción para alterar los requisitos sustantivos de la adopción establecidos por el Código que —reiteramos— **prescriben su jurisdicción**.

Apliquemos estas normas al caso de autos.

V

En el presente caso, el recurrido presentó el 1 de agosto de 1998 —a solicitud de su nieta Karla— una petición de adopción conjunta que, en origen, incluía como peticionaria a su cónyuge, la abuela de la menor. No obstante, ante la objeción de la madre biológica de Karla, según explicamos anteriormente,[32] la petición (*ex parte*) de adopción se enmendó para que apareciese el abuelo de Karla como adoptante *individualmente*. La petición, así enmendada, se presentó en el TPI el 28 de agosto de 1998.[33]

De entrada debemos señalar que "[n]inguno de los requisitos o de las prohibiciones sustantivas de nuestro ordenamiento jurídico sobre adopción impide que un ascendiente adopte a un descendiente". *M.J.C.A., menor v. J.L.E.M., supra*, pág. 931. No obstante, según la norma discutida anteriormente, ante la petición de adopción **individual** presentada por el recurrido

---

[29] E. Menéndez, *Lecciones de derecho de familia*, pág. 314 (1976).

[30] J. Castán Tobeñas, Derecho civil español, común y foral, Tomo 5, Vol. II, pág. 420 (1995); A. J. Pérez Martín, *Derecho de familia*, pág. 493 (1995); *véase además*, artículo 175.4 del Código civil español vigente.

[31] Los siguientes son casos en donde el adoptante era una persona soltera, y por tanto la petición de adopción, por ley, tenía que ser individual. Ex parte *J.A.A., supra*; y *Pérez, Román v. Proc. Esp. Rel. de Fam., supra*. Cabe señalar, además, que ambos casos fueron resueltos conforme a lo establecido en el Código Civil previo a las enmiendas del 1995.

[32] Resulta innecesario en este caso discutir y resolver si, a la luz de las disposiciones del Código Civil de Puerto Rico (art. 134), el consentimiento de un padre o una madre con patria potestad al momento de la adopción, puede ser condicionado; como por ejemplo, en el caso de autos, cuando la madre biológica de Karla dio su consentimiento a la adopción, pero sujeto a que ella pudiese conservar la patria potestad y custodia sobre la menor.

[33] Apéndice, pág. 46.

el 28 de agosto de 1998, el tribunal de instancia simplemente carecía de jurisdicción. *Pérez, Román v. Proc. Esp. Rel. de Fam.*, *supra*, pág. 960; *M.J.C.A., menor v. J.L.E.M.*, *supra*, pág. 921; Ex parte *Warren*, *supra*. Se desprende claramente del artículo 133 del Código Civil, *supra*, que para poder autorizar la adopción de Karla por parte de sus abuelos paternos, éstos tienen que comparecer juntos y tienen que adoptar conjuntamente, ya que "[é]ste requisito, así como los demás requisitos sustantivos para cualificar como un adoptante hábil, son de carácter jurisdiccional". *Pérez, Román v. Proc. Esp. Rel. de Fam.*, *supra*, pág. 960

Conforme a este principio, adicionalmente, resolvemos que las excepciones a la norma de adopción conjunta para los cónyuges establecidas en el artículo 133 del Código Civil, *supra*, son una enumeración taxativa. Si bien el último párrafo del artículo 133 del Código Civil, *supra*, indica que el tribunal "tendrá discreción para resolver situaciones como las dispuestas" en dicho artículo, "teniendo siempre como guía para su decisión el bienestar y conveniencia del menor", dicho artículo claramente establece que "los adoptantes [que] estuvieren casados entre sí . . . **deberá[n] adoptar conjuntamente**". 31 L.P.R.A. sec. 534. Dicho de otro modo, "el Código **impone** que los cónyuges **tienen** que adoptar conjuntamente". E. Menéndez, *op. cit.*, pág. 314. (Énfasis suplido.) Y según resolvimos en *Pérez, Román v. Proc. Esp. Rel. de Fam.*, *supra*, pág. 960, **éste es un requisito jurisdiccional**. Por tanto, su incumplimiento priva de jurisdicción al tribunal. Lógicamente, un tribunal que carece de jurisdicción —por definición— también carece de discreción. Es decir, que sin jurisdicción no puede haber discreción, y los tribunales no tienen discreción para asumir jurisdicción donde la ley no la confiere. *Maldonado v. Pichardo*, 104 D.P.R. 778, 782 (1976)("un tribunal no tiene discreción para asumir jurisdicción donde por ley no la tiene"). "En aras de la liberalidad no podemos ir más allá de la ley". *Rivera Coll v. Tribunal Superior, supra*, pág. 331.

Por lo tanto, en el presente caso los abuelos paternos de Karla, según la ley, tienen que adoptarla conjuntamente. El recurrido sólo puede adoptarla individualmente si ésta fuese hija menor de su cónyuge (art. 133.1); o si los abuelos estuviesen separados (art. 133.2); o si la abuela de Karla tuviese restringida su capacidad jurídica mediante decreto judicial (art. 133.3). Ninguna de estas circunstancias está presente aquí.

La discreción a la que se refiere el último párrafo del art. 133 del Código Civil, *supra*, actúa una vez cumplidos los requisitos jurisdiccionales que la ley exige. Esto es, si se cumplen los requisitos sustantivos, **entonces** el tribunal puede valerse de su discreción para autorizar o no autorizar la adopción, procurando siempre el bienestar del menor. Resolver lo contrario sin duda constituiría una usurpación del poder legislativo. *Pérez, Román v. Proc. Esp. Rel. de Fam.*, *supra*, pág. 966.[34]

---

[34] Según resolvimos en *Pérez, Román v. Proc. Esp. Rel. de Fam.*, *supra*, pág. 961: "A pesar de que el Legislador se dio a la tarea de eliminar obstáculos innecesarios y agilizar los mecanismos para facilitar la adopción, éste eligió conservar el carácter excepcional de la adopción conjunta . . .".

Forzoso es, pues, concluir que erró el Tribunal de Circuito de Apelaciones al confirmar la sentencia del Tribunal de Primera Instancia. El foro de instancia carecía de jurisdicción para autorizar la petición de adopción individual presentada por el recurrido. Lo que procede es la adopción conjunta por los abuelos paternos.

Ello, sin embargo, no necesariamente implica que el deseo de la madre biológica de Karla de mantener ciertas relaciones con su hija no sea dable. Examinemos varias alternativas que puede considerar el tribunal de instancia.

VI

Hemos resuelto que el tribunal de instancia puede considerar "la alternativa de conceder la adopción [conjunta] a los abuelos paternos sin desvincular [al menor] totalmente de su relación con su parentesco biológico por la línea materna". *M.J.C.A., menor v. J.L.E.M., menor*, *supra*, pp. 933-34. En el citado caso indicamos que nada impide que los tribunales, en casos particulares, concedan la adopción y opten por conceder "la patria potestad a los abuelos paternos con la custodia compartida" entre éstos y la madre biológica del menor. *Íd*., pág. 934. Los tribunales, inclusive, pueden considerar **"otro tipo de relaciones con las condiciones que estimen adecuadas y pertinentes"**. *Íd*. (Énfasis suplido.)[35] Lo importante es que las alternativas sean analizadas por el tribunal "a base de los hechos ante sí y . . . del estudio social —mandatorio en estos casos— para optar por la alternativa que beneficie y sea conveniente para el menor". *Íd*.[36] En fin, el tribunal deberá siempre "determinar dónde residen los mejores intereses del menor y cuál debe ser el remedio más adecuado: la adopción o las alternativas antes discutidas". *Íd*.

Por último, la madre biológica de la menor indicó que desea que su hija conserve su segundo apellido, el apellido materno, "Sierra". Afortunadamente, dicho problema tiene solución, ya que el Código Civil provee un remedio sabio, justo y equitativo para casos como éste.

El último párrafo del artículo 138 del Cogido Civil dispone que "[e]l adoptado adquirirá los apellidos del adoptante o los cónyuges adoptantes, **salvo que el tribunal, por causa justificada, determine otra cosa"**. 31 L.P.R.A. sec. 539. En vista de los hechos particulares

---

[35] Inclusive, nada les impide acordar, en aras de causar el menor daño emocional posible, que la patria potestad y custodia sea compartida. Véase *Torres*, Ex parte, 118 D.P.R. 469 (1987).

[36] Tomamos conocimiento judicial de que Karla cumplirá dieciocho (18) años de edad en noviembre del presente año natural (2001). El Código Civil establece que un menor que hubiere cumplido dicha edad puede ser emancipado por decisión del tribunal de instancia (emancipación judicial), si lo solicita un pariente del menor o el menor mismo. Art. 234, 31 L.P.R.A. sec. 912. Asimismo, el Código Civil dispone que podrán ser adoptados los menores de edad emancipados por decreto judicial. Art. 131 (1), 31 L.P.R.A. sec. 533.

No obstante, debemos añadir que, en el presente caso, por el bienestar de la menor, las partes deben continuar regulando y cultivando entre ellos una relación que sea favorable para la menor, como lo han hecho hasta el presente.

del presente caso no hay duda de que existe aquí causa justificada para acomodar la preocupación de la madre biológica de la menor, y acceder a su deseo de que Karla conserve su apellido materno. A esos efectos, el foro de instancia tiene **amplia** discreción, conforme a los mejores intereses de la menor.

Se dictará sentencia para revocar la sentencia del Tribunal de Circuito de Apelaciones de 28 de abril de 2000 y la del Tribunal de Primera Instancia de 4 de marzo de 1999 y devolver al tribunal de instancia para que proceda de conformidad con lo dispuesto en esta Opinión.

BALTASAR CORRADA DEL RIO<br>JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Angel Rafael Virella Archilla

    Recurrido

      v.                                    CC-2000-474

Procuradora Especial
de Relaciones de Familia

    Recurrente


SENTENCIA

San Juan, Puerto Rico, a 7 de agosto de 2001.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia del Tribunal de Circuito de Apelaciones de 28 de abril de 2000 y la del Tribunal de Primera Instancia de 4 de marzo de 1999. Se devuelve al tribunal de instancia para que proceda de conformidad con lo dispuesto en esta Opinión.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton disiente con opinión escrita a la cual se une la Juez Asociada señora Naveira de Rodón. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. Todos los jueces intervienen por regla de necesidad.


                          Isabel Llompart Zeno
                          Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángel Rafael Virella Archilla

    Recurrido

    v.                                    CC-2000-474 Certiorari

Procuradora Especial de
Relaciones de Familia

    Recurrente

Opinión Disidente emitida por el Juez Asociado señor Hernández Denton, a la cual se une la Juez Asociada señora Naveira de Rodón

San Juan, Puerto Rico, a 7 de agosto de 2001.

Debemos decidir si, a tenor con el artículo 133 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 534 (Supl. 2000), una persona casada puede adoptar a una menor individualmente, sin que en la solicitud de adopción comparezca de forma conjunta su cónyuge, y sin que necesariamente opere una de las excepciones estatuidas por la ley para permitir la adopción individual por persona casada.

Resuelve el Tribunal que cuando dos personas estén casadas, una de ellas no podrá adoptar individualmente salvo que sea aplicable alguna de las excepciones establecidas taxativamente por                                    el

mencionado artículo. Por entender que el texto de la ley nos confiere discreción para permitir la adopción independiente de una persona casada siempre que ello responda al mejor bienestar y conveniencia del adoptando menor, disentimos.

I

Karla Lucianne es hija de Eric Noel Virella Santos y de Brunilda Enid Sierra Torres. Nació el 26 de noviembre de 1983 y desde principios de 1984 ha residido continuamente y sin interrupción con sus abuelos paternos, el Sr. Ángel Rafael Virella Archilla y la Sra. Carmen Luz Santos Sifonte. Estos últimos se han ocupado de todos los aspectos de la crianza, educación y demás decisiones importantes atinentes a la menor. De otra parte, a pesar de estar bajo la custodia *de facto* de sus abuelos paternos, Karla mantiene una estrecha relación con su madre, mas no así con su padre.

Por iniciativa de la propia menor, los abuelos presentaron ante el Tribunal de Primera Instancia una petición de adopción conjunta en el 1998. El padre de Karla dio su anuencia a la misma, pero la madre biológica se opuso a la adopción de forma conjunta por no querer renunciar a la patria potestad sobre su hija ni que la menor deje de llevar su apellido. La madre manifestó, sin embargo, no tener objeción a que el abuelo realice la adopción como adoptante individual. Por lo anterior, Virella Archilla presentó, con la autorización de su esposa, una solicitud de adopción ante el Tribunal de Primera Instancia en la que compareció como único peticionario.

La Procuradora de Relaciones de Familia se opuso a la adopción por entender que es contraria a las disposiciones del artículo 133 del Código Civil, <u>supra</u>. De otro lado, el Departamento de la Familia presentó un Informe Social Pericial recomendando desfavorablemente la adopción individual por el Sr. Virella pero favoreciendo la adopción de manera conjunta por entender que, habiendo sido ambos abuelos los padres psicológicos y reales de la menor por quince años, la adopción individual crearía una relación familiar "atípica".

A pesar de la oposición de la Procuradora y del mencionado Informe Social, y luego de celebrada una vista en su fondo, el 4 de mayo de 1999 el Tribunal de Primera Instancia dictó Sentencia concediendo al Sr. Virella Archilla la adopción solicitada y reteniendo la madre biológica la patria potestad sobre la menor. Dicho foro concluyó que "es beneficioso para esta menor de edad concederle al peticionario su adopción, el no hacerlo así derrotaría el principio cardinal de velar por los mejores intereses y bienestar de esta menor que claramente están en el hogar del peticionario y su relación de padre e hija." <u>Relación del Caso, Determinaciones de Hechos, Conclusiones de Derecho y Sentencia</u>, 4 de marzo de 1999, pág. 9.

Sostuvo, además, dicho tribunal, que:

> la adopción de un menor no debe dejarse al **arbitrio único** de un estatuto sino
> a la evaluación que nuestros tribunales puedan hacer de si es o no beneficiosa
> la adopción para dicho menor. Este tribunal está convencido y tiene la certeza
> moral y convicción de que la adopción solicitada debe concederse no solamente

por la prueba desfilada y requisitos estatutarios sino también porque **no hay razón moral ni social para denegarla**. Id. (énfasis en el original).

Inconforme con esta determinación, la Procuradora Especial de Relaciones de Familia presentó un recurso de certiorari ante el Tribunal de Circuito de Apelaciones. Dicho foro confirmó la determinación del foro de instancia y resolvió que el listado de excepciones que prescribe el Código Civil a la norma general –que los cónyuges deben adoptar conjuntamente–, no es una enumeración taxativa, sino que el foro de instancia puede ejercer su discreción y, en ciertos casos, permitir a una persona casada adoptar individualmente a un menor. (Sentencia del 28 de abril de 2000, KLAN9900778, Panel Integrado por el Juez Sánchez Martínez, la Jueza Ramos Buonomo y la Jueza Cotto Vives).

En el día de hoy este Tribunal revoca la Sentencia del Tribunal de Circuito de Apelaciones. Resuelve que la enumeración de excepciones a la norma de adopción conjunta para los cónyuges, establecidas en el artículo 133 del Código Civil, es taxativa y que fuera de esas excepciones el Tribunal de Primera Instancia no puede aprobar adopciones independientes de personas casadas aunque ello redunde en el mejor bienestar y beneficio de la menor. Disentimos, pues entendemos que la lectura que el Tribunal realiza de la ley ignora su claro texto e intención legislativa.


II

En concreto, los hechos de este caso requieren que consideremos si, el artículo 133 del Código Civil de Puerto Rico, supra, permite que el Sr. Virella Archilla, casado con la Sra. Carmen Luz Santos Sifonte, adopte de forma **independiente** a su nieta menor de edad cuando la madre biológica de la adoptada así lo ha solicitado; y tanto el padre biológico, la abuela (esposa del adoptante) y la menor misma consienten a ello. Entendemos que, tomando en consideración el bienestar y conveniencia de la menor, esta cuestión ha de resolverse en la afirmativa.

El derecho sustantivo puertorriqueño en materia de adopción se encuentra en los artículos 130-138 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 531-39 (Supl. 2000). Su propósito primordial "es dar padres a niños que no los tienen, o cuyos padres no les quieren, o no los pueden atender debidamente." Ex Parte J.A.A., 104 D.P.R. 551, 557 (1976).

Antes del 1948, el artículo 134 del Código Civil de 1930 establecía que solamente podían adoptar de manera **conjunta** aquellas personas que estuvieran casadas entre sí. No obstante, dicho artículo permitía ampliamente que una persona casada adoptara a otra individualmente siempre que para ello contara con el consentimiento de su cónyuge.[37]

---

[37] Debe notarse que dicho artículo meramente **permitía** la adopción conjunta por cónyuges, por lo que no era mandatoria. Este artículo establecía que:
> El cónyuge no puede adoptar sin consentimiento de su consorte. Los cónyuges **pueden** adoptar conjuntamente, y fuera de este caso, nadie puede ser adoptado por más de una persona. Art. 134 Código Civil de Puerto Rico, 1930 (énfasis suplido).

Posteriormente, la Ley núm. 100 de 6 de mayo de 1948 enmendó dicho artículo e incluyó el requisito de adopción conjunta cuando los adoptantes se encontraran casados. Permitió, sin embargo, que un cónyuge adopte individualmente solamente cuando el adoptando fuere el hijo de su consorte.[38] Véase, Héctor Ceinos, <u>Leyes Enmendando los Artículos 130, 134, 139, 140, 141, 131 del Código Civil</u>, 19 Rev. Jur. U.P.R. 142, 145 (1949-50).

Luego, mediante la Ley Núm. 86 de 15 de junio de 1953, se enmendó de forma integral nuestro derecho de adopción y se mantuvo, por vía del artículo 131 del Código Civil, la adopción conjunta por parejas casadas. En dicho artículo, no obstante, se autorizó la adopción **individual** por persona casada siempre que se cumpliese con una de las varias excepciones allí estatuidas.

**Este artículo, vigente hasta principios del año 1995 y cuyo texto es similar al actual artículo 133, <u>supra</u>, disponía que:**

> **Nadie podrá ser adoptado por más de una persona, salvo el caso en que los adoptantes estuviesen casados entre sí.** Los cónyuges deberán adoptar conjuntamente, **salvo [1] los casos en que estén separados o [2] uno de ellos esté incapacitado, en cuyos casos habrá que notificar la solicitud al otro cónyuge.**
>
> [3] Si la persona a quien se propone adoptar fuere hijo menor de uno de los cónyuges, su consorte podrá adoptarlo y la persona así adoptada será considerada hija de ambos. A este último efecto no será considerado incapacitado un cónyuge por el hecho de ser menor de edad si el otro reúne los requisitos de edad que fija el Artículo 130. 31 L.P.R.A. sec. 532 (1993).

**Se observa que el texto de este artículo disponía, en primer lugar, la norma general de que sólo una persona podrá adoptar a otra. En segundo término, al indicar que la adopción será individual "salvo el caso en que los adoptantes estuviesen casados entre sí", establecía que de forma** conjunta **solamente podrían adoptar aquellas personas** casadas entre sí. **Ahora bien, y en tercer lugar, establecía como norma general que "los cónyuges deberán adoptar conjuntamente" y, a continuación, establecía tres situaciones en las que, a modo de excepción, permitía la adopción de manera** individual **por parte de un solo cónyuge. Estas excepciones eran: (1) cuando los cónyuges estén separados; (2) cuando uno de ellos se encuentre incapacitado y; (3) si el adoptando fuere hijo menor de uno de los cónyuges.**

**Ahora bien, mediante las Leyes 8 y 9 de 19 de enero de 1995 la legislatura enmendó sustancialmente y de manera general nuestro ordenamiento en materia de adopción. El interés legislativo presente en estos estatutos fue facilitar y viabilizar que los niños puertorriqueños encuentren la protección que en cierto modo garantiza el seno familiar.**

---

[38] La enmienda introducida por esa ley establecía que "nadie podrá ser adoptado por más de una persona salvo el caso en que los adoptantes estuviesen casados entre sí; Disponiéndose que en este caso los cónyuges deberán adoptar conjuntamente. Si el adoptado fuere hijo de uno de los cónyuges, su consorte podrá adoptarlo." Art. 134, Ley núm. 100 de 6 de mayo de 1948.

Así, la legislatura optó por flexibilizar en muchos aspectos el procedimiento y requisitos en este campo, dotando a los tribunales con los mecanismos necesarios para cumplir con esta política pública.

De esta forma, **el artículo 1 de la Ley Núm. 9 de 19 de enero de 1995, establece que la política pública del Estado en materia de adopción es** "facilitar en la forma más liberal y amplia posible dentro del esquema jurídico que rige en Puerto Rico los procedimientos de adopción, . . . además de simplificar y liberalizar sustancialmente los requisitos de ley para la emisión de decretos de adopción." **32 L.P.R.A. sec. 2699 (énfasis suplido). Establece, también, que las determinaciones de los tribunales en cuanto a las solicitudes de adopción se harán** "de acuerdo a las circunstancias particulares del caso tomando en consideración las recomendaciones del informe sobre estudio pericial, pero ello no constituirá una limitación a su autoridad para decidir sobre la adopción" <u>Id</u>. **(énfasis suplido).**[39]

De otra parte, **la Exposición de Motivos de la Ley Núm. 8 de 19 de enero de 1995 específicamente estableció que la misma es "una de las legislaciones más** avanzadas y liberales **de todos los países occidentales en materia de adopción** siendo su espíritu claramente autóctono, ajustado a la realidad de la vida actual de la sociedad puertorriqueña, y protector del bienestar y conveniencia del adoptando." <u>**Exposición de Motivos**</u>**, Ley Núm. 8 de 19 de enero de 1995, Leyes de Puerto Rico, pág. 47 (1995, Parte 1) (énfasis suplido). Asimismo, expresa dicha Exposición que** "es imperativo flexibilizar la institución de la adopción para que ésta pueda ser utilizada ampliamente por personas que deseen adoptar menores de edad" **y de esta forma** "brindarle a esos niños la oportunidad de formar parte de un seno familiar." <u>Id</u>. **(énfasis suplido).**

**Lo anterior debe asumirse, además, bajo el reiterado principio de que "la institución de la adopción como está reglada en Puerto Rico es producto de nuestra autoctonía",** <u>Ex parte J.A.A.</u>**,** <u>supra</u>**, pág. 556 (1976), por lo que este Tribunal debe enmarcar sus interpretaciones de esta legislación "acorde a los principios generales que la inspiran".** <u>Id</u>.

**Fue bajo el marco de este espíritu legislativo, y a la luz de la antedicha política pública, que la Asamblea Legislativa enmendó en el 1995 el artículo del Código Civil pertinente al número y estatus civil de los adoptantes.**

**Así, en lo que nos concierne, el actual artículo 133,** <u>supra</u>**, dispone lo siguiente:**

---

[39] En cuanto a esto último, el Presidente de la Comisión de lo Jurídico Civil de la Cámara de Representantes, el Sr. Díaz Urbina, enfatizó ante el Pleno de dicho cuerpo que, independientemente del referido informe pericial, **"siempre el tribunal retiene en su poder de *parens patria[e]* la determinación y el ejercicio discrecional para procurar el bienestar del menor . . ."** <u>Diario de Sesiones Cámara de Representantes de Puerto Rico, Sexta Sesión Extraordinaria de la Duodécima Asamblea Legislativa</u>, pág. 272, 8 de diciembre de 1994 (énfasis suplido).

Nadie podrá ser adoptado por más de una persona, **salvo que los adoptantes estuvieren casados entre sí en cuyo caso se deberá adoptar conjuntamente.**

Un cónyuge podrá adoptar individualmente en cualquiera de los siguientes casos:

(1) Cuando desee adoptar al hijo menor de edad del otro cónyuge.

(2) Cuando esté separado de su cónyuge, por lo menos durante los dos (2) meses anteriores a la fecha de la presentación de la petición, en cuyo caso habrá de notificarse dicha solicitud al otro cónyuge.

. . .

(3) Cuando por decreto judicial el cónyuge del adoptante tenga restringida su capacidad jurídica, mientras dure dicha restricción, en cuyo caso habrá de notificarse dicha solicitud al otro cónyuge.

**El tribunal tendrá discreción para resolver situaciones como las dispuestas en este artículo, teniendo siempre como guía para su decisión el bienestar y conveniencia del menor.** Art. 133, <u>supra</u>, (énfasis suplido).

**En términos generales, este artículo preservó las mismas condiciones que tenía el anterior artículo 131 para la adopción individual por un cónyuge. Establece la norma general de que las personas casadas deberán adoptar conjuntamente y, luego, establece una serie de excepciones a esta norma general.**

**Ahora bien, y de esencial importancia para el caso de autos, al establecer en su último párrafo que el tribunal tendrá discreción** "para resolver situaciones como las dispuestas en este artículo", **el legislador optó por matizar las situaciones previstas por dicho artículo y,** específicamente, conferir a los tribunales un ámbito de discreción mayor no contemplado anteriormente. **Así, la Asamblea Legislativa nos confirió la facultad para que sentemos la pauta en aquellas situaciones no previstas por la ley, pero que pudiesen surgir en el futuro. De esta forma, una situación como la presente —no específicamente contemplada en la ley— quedaría adecuadamente atendida pues, como bien estimó el foro de instancia, la aprobación de la solicitud de adopción aquí instada resguardaría el mejor bienestar y conveniencia de la menor así como el cumplimiento con la política pública del Estado en materia de adopción.**

**Este cambio en perspectiva y mayor amplitud en el marco de acción de los tribunales responde, reiteramos, al mencionado espíritu flexible y liberal que inspiró nuestra más reciente legislación en materia de adopción y al loable interés por que los requisitos de ley para la emisión de decretos de adopción sean sustancialmente liberales de tal modo que este mecanismo pueda ser ampliamente utilizado por personas que deseen adoptar menores de edad.**

**En vista de lo anterior recalcamos que el listado de instancias en las que el referido artículo permite la adopción individual por un cónyuge, no debe ser considerado como una enumeración taxativa. La regla de hermenéutica <u>expressio unius est exclusio alterius</u>, según la cual la mención específica de una cosa implica la exclusión de otras no nombradas, es inaplicable cuando la intención legislativa surge de otra manera; cuando su aplicación conflige con el pensamiento del legislador; y cuando seguirla puede conducir a situaciones incompatibles o injustas. Véase, R. Elfrén Bernier y José Cuevas Segarra, <u>Aprobación e Interpretación de las Leyes en Puerto Rico</u>, pág. 345-46 (2da. Ed.**

1987). Ello se debe a que esta regla de hermenéutica "constituye únicamente una ayuda para fijar el significado de la ley y debe ceder cuando surge una intención contraria de parte del legislador" Id., pág. 346.[40]

No debe olvidarse, además, lo resuelto en Pueblo v. Tribunal Superior, 104 D.P.R. 363 (1975), por voz del Juez Presidente señor Trías Monge, en cuanto a la necesidad de una interpretación estatutaria sensible a la realidad social que motiva la letra de la ley:

> Las palabras no habitan un universo propio, desvinculado del mundo que las genera y al que se refieren. . . El lenguaje es tan sólo inteligible en función de ese mundo. El lenguaje jurídico en especial deriva su significado de las realidades que lo forjan y alteran. . . Aun cuando el idioma en su interpretación literal contradiga el propósito de una disposición estatutaria, lo que debe ceder es el idioma y no la realidad que motiva el estatuto. Importa en consecuencia penetrar la superficie verbal del problema ante nos, precisar el diseño y la razón de ser de las disposiciones legales que aquí nos ocupan, sopesar los intereses en juego, para intentar acercarnos a la interpretación más justiciera. Id. pág. 366.

El artículo 133 no establece que un cónyuge podrá adoptar individualmente exclusivamente en las circunstancias contempladas. Más bien, establece que un cónyuge "podrá adoptar individualmente en cualquiera" de los casos allí enumerados. La falta de tal exclusividad en la enumeración, unida a la concesión especial de discreción al Tribunal en este particular artículo, así como al espíritu liberal de la ley de adopción en general, y al interés en promover el mejor bienestar del menor mediante la facilitación institucional de la adopción, indican concluyentemente que fue la intención legislativa dejar a la discreción de los tribunales la resolución de casos como el presente.

Es decir, reconociendo precisamente que los escenarios adoptivos son por naturaleza muy distintos entre sí y, por ende, susceptibles de un trato particularizado, la legislatura prefirió ensanchar el marco de acción judicial con el último párrafo del artículo 133, supra, "para resolver situaciones como las dispuestas en este artículo,

---

[40] De esta forma, por ejemplo, en Sucn. Gilberto Álvarez v. Secretario, res. el 21 de febrero de 2000, 2000 TSPR 21, recalcamos estos principios interpretativos y resolvimos que la disposición de la Ley Núm. 125 de 10 de junio de 1967, relativa al pago global de licencia de vacaciones no utilizada, incluía –aunque el estatuto así no lo mencionara– el pago de licencia por enfermedad, en caso de muerte. Véase además, Almodóvar Marchany v. G.P. Industries, res. el 17 de enero 2001, 2001 TSPR 4, resolviendo que no es exhaustivo el listado de motivos que constituyen justa causa para el despido según el artículo 2 de la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185(b). En este último caso, inclusive, se resolvió que "[l]a literalidad puede ser ignorada por los tribunales sólo cuando ella es claramente contraria a la verdadera intención o propósito legislativo, según

teniendo siempre como guía para su decisión el bienestar y conveniencia del menor" y así permitir la adopción en casos como éste.

Lo anterior, además, se realiza cuando el adoptando es un menor de edad, pues tanto el supremo propósito de propender al bienestar y mejoramiento del adoptando menor, así como el entendido hermenéutico de que nuestros estatutos sobre adopción deben ser siempre interpretados liberalmente a favor del adoptando, son ineludibles principios guías en la adjudicación de casos en esta materia. Véanse, Ex parte Feliciano Suárez, 117 D.P.R. 402, 408 (1986); Ex parte J.A.A.; supra, pág. 559 (1976); Valladares v. López, 89 D.P.R. 254, 261 (1963); Ex parte Ortiz y Lluberas, 42 D.P.R. 350, 256 (1931). Véase además, Exposición de Motivos, Ley Núm. 9 de 19 de enero de 1995, Leyes de Puerto Rico, pág. 61. ("el fin primordial que anima todo el procedimiento de adopción, y el que sirve de norte al Tribunal para autorizar la misma, es el bienestar y conveniencia del adoptado").

Enfatizamos también que, en materia de interpretación estatutaria, los tribunales no podemos presumir que la Asamblea Legislativa realiza actos inútiles. Talcott Inter-American Corp. v. Registrador, 104 D.P.R. 254, 262 (1975). Por tanto, y en vista del espíritu liberal que animó esta legislación, entendemos que la legislatura quiso con la adición de este último párrafo ampliar sustancialmente las facultades judiciales en estos casos. Interpretar lo contrario equivaldría a suponer que, además de pura retórica, nada quiso añadir la legislatura con esta disposición, pues la discreción de modo general en cuanto a la concesión de las solicitudes de adopción siempre ha recaído en manos de los tribunales. M.J.C.A. v. J.L.E.M., 124 D.P.R. 910, 932-33 (1989); Peña et al. v. Corte, 32 D.P.R. 936, 938 (1924).

En fin, concluimos que en el ejercicio de esta amplia discreción conferida por la legislatura, un tribunal puede permitir que un cónyuge adopte de manera individual según los hechos particulares de cada caso, condicionado ello a que se promueva el mejor bienestar y conveniencia del adoptando menor, y no limitada esta discreción a las instancias en que la ley permite explícitamente la adopción individual por parte de un cónyuge.[41]

---

tal propósito o intención puede surgir de la totalidad del estatuto o de la sección envuelta". Id. (énfasis suplido).

[41] Lo expresado anteriormente no implica que el propio artículo no contenga límites intrínsecos a la discreción conferida. Al indicar que "nadie podrá ser adoptado por más de una persona, salvo que los adoptantes estuvieren casados entre sí", el actual artículo 133 claramente condiciona la adopción de manera conjunta a que los adoptantes estén casados. La referida discreción adicional, por tanto, no es aplicable en esos casos. Dicha prohibición de adopción conjunta, no obstante, no debe confundirse con la situación de marras, pues el presente caso trata de una solicitud de adopción individual de una persona ya casada, situación que se rige más bien por la frase relativa a que los cónyuges adoptantes "deberán adoptar conjuntamente".

Esto es, la norma reconocida en Pérez Vega v. Procurador Especial de Relaciones de Familia, res. el 27 de abril de 1999, 99 TSPR 64, a los efectos de que conjuntamente pueden adoptar exclusivamente personas casadas, en nada implica que lo inverso sea

## III

En el presente caso, el bienestar y conveniencia de la menor estribaría en conceder lo que ella misma ha solicitado y a lo que ha consentido, a tenor con la realidad que todas las partes concernidas viven diariamente, y de acuerdo a las circunstancias particulares del caso. Entendemos, pues, que la única forma de hacer cumplir la intención legislativa y los importantes intereses del artículo 133 del Código Civil, es permitiendo la adopción solicitada. Resolver lo contrario, además de provocar una situación injusta, contravendría el claro texto de la ley y el espíritu liberal de la misma.

**Debe recordarse que en este caso surgió un mutuo y saludable reconocimiento de sensibilidades que debió recibir la más entusiasta aprobación por este Foro. De un lado, la madre biológica –al consentir a la adopción solicitada– reconoció que entre Karla y sus abuelos paternos existe una afectividad muy especial nacida del esfuerzo realizado por estos últimos en bienestar de la menor. Por otro lado, los abuelos, padres al fin, han reconocido el dolor que debe representar para una madre el tener que renunciar al vínculo jurídico-afectivo que tiene con Karla, la hija que quiere y ama. Además, en medio de esta concreta realidad social, se encuentra Karla. Ciertamente lo hoy resuelto por este Tribunal no le privará del afecto que recibe de sus familiares cercanos. Pero lamentablemente sí le robará la oportunidad de ver materializado lo que en justicia debemos facilitar: la unión entre la saludable realidad social que esta menor vive en lo cotidiano, y la representación de esta realidad en la esfera de lo jurídico-legal. Esto es precisamente lo que el peticionario ha solicitado y es, a su vez, lo que la Opinión del Tribunal en su más endurecido textualismo se ha negado a reconocerle, no sólo al peticionario, sino a todas las figuras de este drama humano.**

---

**igualmente cierto, i.e., que personas casadas solamente pueden adoptar conjuntamente sin que quepa excepción al respecto. Esto se debe a que el requisito de matrimonio para las adopciones** conjuntas **responde al propósito legislativo de evitar la adopción por concubinos, mas no así la norma de favorecer la adopción conjunta por personas casadas, pues la adopción individual por un cónyuge de ninguna forma crea ni fomenta el concubinato <u>more uxorio</u>. En cambio, la doctrina reconoce que la preferencia legislativa por la adopción por cónyuges de manera conjunta –y no individual– responde a otros intereses que, distinto al claro propósito de no permitir la adopción por concubinos, permite una aplicación más particularizada de la ley.**

Así, el catedrático Efraín González Tejera ha entendido que con esta preferencia se intenta evitar que se introduzca a un nuevo miembro de la familia sin el consentimiento del otro cónyuge y así proteger la estabilidad de la familia a la cual va a entrar el nuevo hijo o hija. Efraín González Tejera, <u>Bienestar del Menor: Señalamientos en Torno a la Patria Potestad, Custodia y Adopción</u>, 54 Rev. Jur. U.P.R. 409, 469 (1985). A tenor con este propósito dicho comentarista ha sostenido, pues, que son concebibles "situaciones donde, por variadísimas razones, una persona casada esté dispuesta a adoptar el hijo de una persona soltera sin que su cónyuge concurra a la adopción **pero esté completamente de acuerdo.** En esa situación se promoverían los fines de la ley y no se pondría en riesgo la armonía matrimonial. Después de todo, la legislación de adopción debe ser interpretada liberalmente a favor del adoptado." <u>Id.</u>, pág. 470-71 (énfasis suplido).

Al presentarse la solicitud de adopción, todos y cada uno de los miembros de esta familia habían prestado su consentimiento. No se trata este caso, por ende, de una situación en que un cónyuge intente adoptar individualmente en contra de la voluntad del otro. Tampoco se trata de una situación en que se adopte a una menor de muy pocos años, cuya estabilidad en su crianza encare un incierto porvenir. Todo lo contrario, Karla ha expresado su interés en que se efectúe la adopción por sus abuelos, padres de crianza. Por otro lado, la abuela, aunque inicialmente deseaba adoptar conjuntamente, ha accedido a que sólo sea su esposo el adoptante para armonizar sus intereses con los de la madre biológica. Ciertamente, siendo ésta la solución sobre la cual todos se han puesto de acuerdo concurren los elementos para que, con la adopción solicitada, se propenda al bienestar de la menor mediante el ejercicio de la sana discreción del Tribunal.

**No debe olvidarse que detrás del frío expediente de este caso y del texto de la ley tomado aisladamente, existen personas de carne y hueso cuyas esperanzas están cifradas en este Tribunal para que, a través de las categorías jurídicas que la ley provee, canalicemos el afecto y amor que <u>extra legem</u> se reciprocan.**

Por ello, los remedios alternativos que la Opinión del Tribunal ofrece a la situación de marras son insuficientes. Sin dudas, un tribunal puede reconocerle a una madre biológica la **custodia compartida** entre ella y los abuelos adoptantes, así como, por causa justificada, ordenar la retención de los **apellidos** biológicos. No obstante, en vista de la terminante ruptura que provoca la adopción de todo vínculo jurídico entre el adoptado y su familia biológica, 31 L.P.R.A. sec. 538 (Supl. 2000), el remedio adecuado en este caso consistiría en permitir que la madre biológica preserve la **patria potestad** sobre su hija en combinación con el abuelo paterno.[42] La Opinión del Tribunal, en lugar de lograr esta justicia particularizada, descarta esta alternativa por el mero provecho de seguir una interpretación errada de la letra de la ley, aun cuando el texto claramente se preste para interpretaciones más razonables y flexibles. Además, el efecto práctico de la Opinión del Tribunal es imponer innecesariamente un criterio sobre lo que constituye una estructura familiar adecuada sin considerar que nuestro derecho de adopción debe ser lo suficientemente amplio como para acomodar los intereses y sensibilidades de todas las partes concernidas.

IV

A tenor con todo lo anterior, y tomando en consideración la liberal intención legislativa en nuestra legislación de adopción, el manifiesto interés por proteger el mejor bienestar de la menor y el texto del artículo 133 del Código Civil de Puerto Rico, <u>supra</u>, confirmaríamos la excelentemente fundamentada Sentencia del Tribunal de Circuito de Apelaciones, la cual, a su vez, confirmó la determinación del Tribunal de Primera Instancia al aprobar la adopción individual solicitada por el Sr. Ángel Rafael Virella Archilla. Por ende, respetuosamente disentimos de la Opinión de este Tribunal al revocarlas.


Federico Hernández Denton
Juez Asociado

---

[42] En <u>Ex parte J.A.A.</u>, <u>supra</u>, interpretando nuestro Código Civil previo a las enmiendas del 1995, resolvimos que "[c]uando el adoptante sea una sola persona, y ésta no sea cónyuge del padre o madre del niño . . . el tribunal, en vista de las circunstancias específicas de cada caso, deberá decidir si la ruptura del parentesco biológico del adoptado opera respecto de ambas líneas, la paterna y la materna, o respecto de una sola." <u>Id</u>. en la pág. 558.