*744 TEXTO COMPLETO DE LA SENTENCIA
Comparecen ante nos, mediante recursos de apelación (KLAN-06-01296) y de certiorari (KLCE-06-01634), Ivette Ortiz Torres y Juan E. Tripari, en adelante, los peticionarios, solicitando la revisión de una Sentencia y Resolución emitidas por el Tribunal de Primera Instancia, Sala Superior de Ponce. En el recurso KLAN-06-01296, el tribunal a quo declaró Con Lugar una “Solicitud de Desestimación” instada por el Departamento de la Familia. Por su parte, en el recurso KLCE-06-01634, el foro de instancia denegó una “Moción en Solicitud de Intervención & Desestimación” presentada por los peticionarios.
Por las razones que expresamos a continuación, y luego de consolidar los recursos presentados, se expide el auto solicitado y se confirma el dictamen recurrido en el KLAN-06-01296 y se deniega la expedición del recurso KLCE-06-01634.
I
Conforme surge de los recursos ante nuestra consideración, el 20 de octubre de 2004, los peticionarios, quienes están casados entre sí, instaron una Petición de Adopción (JEX2004-0151). Surge de una misiva de 30 de julio de 2004, que los peticionarios ya aparecían en el listado de personas elegibles como candidatos a *745 adoptar. En la Petición de Adopción, solicitaron adoptar al menor J.D.N. nacido el 22 de junio de 2002. Apuntaron, en lo pertinente:

11. El referido menor con iniciales J.D.N., ha vivido bajo la guarda de los aquí peticionarios desde el día 17 de julio de 2002; habiendo asumido éstos, toda la responsabilidad en cuanto a su custodia, brindándole cariño, amor y ternura; considerándolo como hijo propio.

12. Los peticionarios desean adoptar formalmente al menor con iniciales J.D.N., a todos los efectos legales con el nombre de JONATHAN DANIEL TRIPARI ORTIZ.

13. ...

14. La madre biológica del menor con iniciales J.D.N., fue demandada por el Departamento de la Familia y privada de la custodia legal de la (sic) menor en los casos números: LMM 2002-0052 y LMM 2003-0015. Por lo que se le solicita a este Honorable Tribunal que le Ordene al Departamento de la Familia presentar al Tribunal copia de las referidas resoluciones y/o sentencias en los casos antes indicados.

15. Que el Departamento de la Familia es parte indispensable en el procedimiento en autos, por lo que es necesario que comparezca un funcionario de dicho Departamento debidamente acreditado.

16. El propósito inicial de este procedimiento, es privar a la madre biológica de la Patria Potestad que ostentan sobre el menor con iniciales J.D.N., antes de iniciar la vista de Adopción.

17. ...

20. La madre biológica tienen (sic) un historial de inadaptación social (“social disfunctioning”), incurriendo en acciones y/o omisiones culposas constitutivas de negligencia y/o maltrato con relación al menor con iniciales J.D.N.

21. Durante el tiempo en el cual el menor con iniciales J.D.N. ha residido con los aquí peticionarios, la madre del menor intencional o negligentemente, nunca han (sic) provisto de alimentos, manutención, cuidados, amor, cariño, o algún tipo de atención, requerido por el menor. Esto constituye poner en riesgo sustancial de sufrir daño o perjuicio predecible, a la salud física, mental o emocional y moral del menor. Acto contrario a la ley.

22. El menor objeto de la presente Petición, fue removido a la madre biológica Migdalia Nieves, sin que hasta el momento se haya relacionado filialmente con el menor o haya satisfecho alguna necesidad del mismo. Constituyéndose así, actos constitutivos de maltrato y/o negligencia....

23. La madre biológica del menor con iniciales J.D.N. han (sic) confrontado problemas de abuso de sustancias controladas, maltrato, negligencia, mala utilización de las ayudas económicas y del presupuesto familiar; que puso en riesgo la menor. El Departamento de la Familia, luego de intentar rehabilitar a esta madre biológica, procede a privarla de la custodia del menor, con iniciales J.D.N.,...

Véase, Anejo I del Apéndice.
A tales efectos, se le solicitó al Tribunal de Primera Instancia, inter alia, ordenara al Departamento de la Familia efectuar el correspondiente Estudio Social y señalara la vista de la primera comparecencia.
*746 El 4 de noviembre de 2004, el tribunal apelado emitió varias Ordenes solicitándole al Departamento de la Familia las Sentencias y/o Resoluciones de los casos LMM 2002-0052 y LMM 2003-0015. Asimismo, le ordenó preparar el Estudio Social y señaló la primera comparecencia.
Así las cosas, y luego de celebrada la primera vista el 30 de noviembre de 2004, los peticionarios instaron escrito intitulado “Moción Urgente en Solicitud de Vista". Apuntaron que el Departamento de la Familia había informado que existía “una querella informe de Carlos Albizu de una menor del departamento validando alegaciones de actos lascivos de su hijo menor de edad a dicha menor". (Véase, pág. 21 del Apéndice.) En consecuencia, se le informó a la peticionaria que removerían al menor J.D.N. de su hogar. A tales efectos, los peticionarios le solicitaron al Tribunal de Primera Instancia, inter alia, señalara una vista urgente con la presencia de ciertos funcionarios del Departamento de la Familia; estableciera relaciones filiales provisionales; que se les diera acceso al Informe Querella y que se prohibiera a la agencia colocar al menor en un hogar adoptivo.
Posteriormente, reiteraron su petición en un nuevo escrito ante información de que el menor había sido colocado en un hogar adoptivo.
Ante lo anterior, el Departamento de la Familia presentó escrito titulado “Moción Urgente Solicitando Paralización de los Procedimientos y Solicitud de Prórroga". Se le informó al Tribunal de Primera Instancia que el menor J.D.N. junto con otros menores habían sido removidos del hogar de los peticionarios. El Departamento de la Familia descansó la determinación tomada en una investigación efectuada por la Unidad de Maltrato Institucional. La agencia solicitó la paralización de los procedimientos en el Caso Núm. JEX 2004-0151 y una prórroga para exponer su posición en cuanto a los escritos presentados por los peticionarios. Dicho escrito fue declarado Con Lugar.
Posteriormente, el Departamento de la Familia emitió su posición. Planteó que el menor había sido removido del hogar de los peticionarios por ser éstos objeto de una investigación de la Unidad de Maltrato Institucional, y ante la seriedad y gravedad de las alegaciones instadas era necesario proteger la salud y bienestar del menor. Apuntó la agencia que la determinación no era una final en cuanto a las alegaciones, por lo que no procedían las solicitudes de los peticionarios.
Luego de varios incidentes procesales, que incluyeron que se ordenara al Departamento de la Familia la preparación del Estudio Social, los peticionarios presentaron un recurso de mandamus ante el foro de instancia. Apuntaron:

12. Contrario al ordenamiento jurídico, contrario al debido proceso de ley y en violación a los derechos de los demandantes (peticionarios), el Departamento de la Familia, citaron a los demandantes (peticionarios) para comparecer a las oficnas (sic) del departamento, el día 29 de noviembre de 2004, a las 2:00 de la tarde. Una vez comparecieron los Demandantes (peticionarios), según lo solicitado por el Departamento de la Familia, le notificaron a los Demandantes (peticionarios) que el menor le sería removido inmediatamente a base de un referido de maltrato que no había sido investigado.

13. Negándose a brindar información alguna sobre el alegado referido, y basando su actuación a que no estaba presente un abogado del Departamento de la Familia.

14. Aún así, los funcionarios del Departamento de la Familia han admitido que el alegado referido en nada se relaciona con el menor objeto de la adopción.

*747
15. Ese mismo día 29 de noviembre de 2004, funcionarios del Departamento de la Familia removieron al menor con iniciales J.D.N., del Hogar de los Demandantes (peticionarios). Esta actuación de remover al menor fue una contraria al mejor bienestar y sin tener orden o autorización del Tribunal en el cual se estaba procesando la Adopción.

16. Dicha remoción fue una arbitraria, caprichosa, ilegal y violatoria del debido procedimiento de ley. La misma fue realizada sopretexto de una información o referido el cual no le fue notificado debidamente ni investigado por funcionario alguno del Departamento de la Familia.

17. Ese mismo día 29 de noviembre de 2004, el menor con iniciales J.D.N. fue ubicado en otro Hogar Adoptivo con instrucciones para que iniciaran prontamente los procedimientos de Adopción.

18. Entre las personas que actuaron contrario a la ley se encuentran las siguientes: Elizabeth García, actuando como Directora Asociada de la Administración de Familias y Niños; José Ortiz, Ayudante Administrativo y actuando en Representación de la Directora Regional Mérida Pagan; Vivian Torres, Supervisora de la Unidad de Adopciones; y Norma Sánchez, Supervisora de la Unidad de Maltrato Institucional.

19. Las actuaciones de las personas antes mencionada (sic) son unas ilegales y/o intencionales y/o negligentes y/o arbitrarias y/o caprichosas, dirigidas al único fin de ubicar al menor con iniciales J.D.N., en otro hogar adoptivo.

20...

21. Es parte del debido procedimiento de ley que el referido en contra del Hogar Adoptivo le sea notificado por escrito. Luego de dicha notificación procede que el Departamento de la Familia provea un de (sic) procedimiento administrativo en (sic) justo e imparcial en el cual se le brinde la oportunidad de conocer las alegaciones específicas del alegado referido y este Hogar Adoptivo tenga la adecuada oportunidad de rebatir esas alegaciones que no fueron investigadas antes de privarle a los demandantes (peticionarios) de sus derechos.

22. Es indispensable que se les notifique adecuadamente y de forma específica a los Demandantes (peticionarios) de todas y cada una de las alegaciones del alegado referido; que se les provea de un procedimiento justo, imparcial y oportuno para que los aquí Demandantes (peticionarios) tengan la adecuada oportunidad de confrontar las alegaciones, refutarlas y ofrecer en prueba en contrario.

23. También es indispensable que este Honorable Tribunal Ordene (sic) al Departamento de la Familia NO autorizar ningún procedimiento de adopción por el Hogar de Crianza donde está ubicado el menor objeto de este procedimiento, hasta tanto sea resuelta la controversia en autos. De no concederse esta solicitud, los derechos de los Demandantes (peticionarios) y el bienestar del menor sería adversamente afectados (sic) de forma irremediable.

24. Como parte del debido procedimiento de ley es necesario que este Honorable Tribunal Ordene (sic) la celebración de una vista justa e imparcial, en la cual los Demandantes (peticionarios) y el Departamento de la Familia expresen sus fundamentos y argumentos en cuanto a la controversia de autos.

25. Una vez sea celebrada la vista antes solicitada, entonces que procedería a (sic) continuación de los procedimientos en la Petición de Adopción incoada por los demandantes (peticionarios).

26. Mientras esté pendiente el caso en autos, el menor con iniciales J.D.N., sea ubicado con los 
*748
Demandantes (peticionarios) de epígrafe, Ivette Ortiz Torres y Juan Enrique Tripari Ruiz; o en la alternativa, el menor sea ubicado en un Hogar el cual no sea uno Adoptivo y por el bienestar del menor, se le concedan a los Demandantes (peticionarios) Ivette Ortiz Torres y Juan Enrique Tripari Ruiz, unas relaciones filiales con el menor objeto de este procedimiento.

27. Con elfin de acreditar debidamente todas y cada una de las alegaciones en este caso, los Demandantes (peticionarios) le solicitan autorización a este Honorable Tribunal para la contratación y presentación de una Trabajadora Social con amplia experiencia en estos casos y con pleno conocimiento de las normas y reglamentos del Departamento de la Familia. ”

Véase, Anejo XIII del Apéndice.
Posteriormente, los peticionarios, mediante otro escrito y dentro del pleito de Adopción, solicitaron que el Estudio Social fuera realizado por otra Oficina Regional del Departamento de la Familia. La petición descansó en que los funcionarios que habrían de efectuar el Estudio Social eran los mismos que “actuaron de manera caprichosa e ilegalmente en la Remoción del menor objeto de la presente Adopción. Para evitar la posibilidad de algún prejuicio y/o parcialidad...el referido Estudio Social sea realizado por la Unidad de Adopciones de Guayama”. (Véase, pág. 52 del Apéndice.)
Sobre el anterior escrito, el tribunal apelado emitió una Orden de Mostrar Causa por la cual no debía conceder lo solicitado. El Departamento de la Familia informó que no se les había notificado de dicha moción, pero que no obstante entendía que la información sobre la investigación de la Unidad de Maltrato Institucional debía canalizarse a través del procedimiento administrativo. Surge de autos que, posterior a esta moción, el Tribunal de Primera Instancia el 21 de abril de 2005 celebró una vista paralizando los procedimientos. Se desprende del Acta que la Procuradora informó que no se favorecía la adopción por la falta de disponibilidad de los peticionarios y una determinación de la Unidad de Adopción donde se concluye que hubo maltrato institucional.
A tono con los sucesos anteriores, los peticionarios incoaron una apelación administrativa ante la Junta Adjudicativa del Departamento de la Familia.
Mientras tanto, en el pleito de Adopción, el Tribunal de Primera Instancia emitió una Orden a la Unidad de Adopciones a fin de que no se le diera curso a ninguna otra Petición de Adopción sobre el menor. Dicha Orden fue emitida el 8 de agosto de 2005.
Así las cosas, y en el pleito de Mandamus (JPE2005-0211), luego de los trámites procesales de rigor, el Tribunal de Primera Instancia expidió el auto, ordenándole al Departamento de la Familia realizar la vista. Sobre la petición referente a la adopción del menor, se tomó conocimiento judicial de la determinación en el caso JEX2004-0151.
Luego de otros trámites procesales, el 14 de diciembre de 2005, la Junta Adjudicativa del Departamento de la Familia emitió Notificación. El organismo apelativo expuso que la Unidad de Maltrato Institucional no había provisto a los peticionarios de la información solicitada, ni le notificó la negación a hacerlo por lo que no se “ha cumplido con el debido proceso de ley”. (Véase, pág. 93 del Apéndice.) Apuntó dicho foro que se veía imposibilitado de entrar a los méritos del caso ante tanto la Unidad de Maltrato Institucional “provea lo solicitado por lo peticionarios... (Véase, pág. 94 del Apéndice.)
En el pleito de Adopción, el Departamento de la Familia presentó una “Moción Informativa” el 16 de diciembre de 2005. Lo anterior, toda vez que se había presentado otra Petición de Adopción (JEX2005-0176), génesis del recurso KLCE-06-01634, sobre el menor objeto del procedimiento (JEX2004-0151) señalándose *749 una vista. Ante lo anterior, el 29 de diciembre de 2005, el Tribunal de Primera Instancia en el pleito JEX2004-0151 emitió una Orden de Mostrar Causa por lo cual no debía dejarse sin efecto la Orden de 8 de agosto de 2005, “en beneficio de los mejores intereses del menor”. (Véase, pág. 97 del Apéndice.)
Los peticionarios presentaron escrito en cumplimiento de Orden. Solicitaron se mantuviera en vigor la Orden de 8 de agosto de 2005. Por su parte, el Departamento de la Familia señaló que paralizar o dejar sin efecto la petición de adopción del caso JEX2005-0176 [4] atrasaría la finalidad de localizar el menor.
El 18 de enero de 2006, los peticionarios presentaron escrito intitulado “Moción Urgente en Solicitud de Remedió”. Informaron al Tribunal de Primera Instancia sobre el proceso JEX2005-0176, solicitando su desestimación y/o paralización. El 24 de enero de 2006, el Tribunal de Primera Instancia emitió Orden. Apuntó el foro de instancia:

Luego de presentado este recurso, el Departamento de la Familia reubicó al menor en otro hogar de crianza. Se alega que hay en proceso una investigación administrativa sobre maltrato institucional que provocó la reubicación del menor en otro hogar pre adoptivo. Es el Departamento de la Familia quien tiene a su cargo la custodia del menor.

La adopción que nos ocupa no puede llevarse a cabo sin la participación activa del Departamento de la Familia. A los fines de adelantar el presente caso es importante conocer la posición del Departamento de la Familia en cuanto a la adopción solicitada. Es decir, debe proceder a informar al Tribunal cuál es su recomendación sobre la adopción y si el caso está listo para vista final de adopción en sus méritos. Nuestra orden de 8 de agosto de 2005, va dirigida a buscar que el presente caso pueda resolverse. A esto tienen derecho los peticionarios (peticionarios) de epígrafe, a que su caso se resuelva en sus méritos, bien concediendo la adopción, o declarándola sin lugar. El Departamento de la Familia y la Unidad de Adopciones deben cooperar con este simple fin: disponer de este caso.

Esto es irrespectivo del curso de la investigación administrativa pendiente. ... ”.
Véase, págs. 125-126 del Apéndice.
En consecuencia, dicho foro señaló vista para dilucidar la controversia. El Departamento de la Familia solicitó la transferencia de la vista mediante escrito informativo. Adicionó, a su vez, que no favorecía la adopción del menor por los peticionarios, toda vez que una menor que había estado ubicada en el hogar de los peticionarios alegó haber sido víctima de abuso sexual. El Departamento de la Familia informó que las alegaciones habían sido validadas por la Universidad Carlos Albizu. Ante dicha información, la agencia procedió a reubicar al menor, solicitando los peticionarios una vista adjudicativa.
Posteriormente, el 13 de marzo de 2006, el Departamento de la Familia reiteró que la posición actual era la de no favorecer la adopción. No obstante, apuntó que la posición no era final, ya que podría ser cambiada luego de la vista por la Junta Adjudicativa. Planteó que, ante lo anterior, la Unidad de Adopciones no podía tomar una determinación final. (Véase, pág. 149 del Apéndice.)
Así las cosas, surge de Acta de 16 de marzo de 2006 lo siguiente:

El Tribunal indica que su preocupación desde que tiene este caso ha sido precisamente que no tiene en el 
*750
expediente una posición de parte del Departamento de la Familia en cuanto a esta adopción. Esto nos llevo (sic) a emitir una orden a la unidad de adopciones para que no se diera curso a ninguna otra petición de adopción en cuanto a este menor; no obstante, la misma se dejó sin efecto por las razones que aparecen en la resolución y orden que se emitió a esos efectos. Los casos de adopciones no se pueden mantener abiertos por mucho tiempo. Si no hay un consentimiento para la adopción, no se puede llevar a cabo la misma. El derecho es rogado. Sobre este menor hay dos peticiones de adopciones diferentes lo cual es incongruente.

Expresa el licenciado Castillo que los que están solicitando la adopción en el otro caso son las personas que tienen actualmente al menor.

Informa la licenciada Torres que la posición del Departamento de la Familia es no favorecer la petición de adopción de los peticionarios (peticionarios) por unas alegaciones de abuso sexual en el hogar de éstos.

La TS Vivian Torres hace referencia a la carta emitida el 14 de abril de 2005 y lee la misma para record. La unidad de maltrato institucional no recomienda ubicación de menores en el hogar de crianza de los peticionarios (peticionarios), ya que la UCA envió un informe validando actos lascivos hacia una menor del Departamento de la Familia.

La vista adjudicativa es el día 7 abril de 2006 donde se va hacer el planteamiento de este matrimonio por los hechos encontrados por la unidad de maltrato institucional. Además indica que siempre fueron claros con el otro matrimonio y se les indicó que no se le estaba dando al menor para que radique una adopción.

Se les explico (sic) que el hogar de crianza donde estaba ubicado el menor desean al menor en adopción.

La licenciada Torres solicita el desistimiento del presente caso ante la posición del Departamento de la Familia de no consentir a la adopción.

El licenciado Castillo indica que eso va en contra del debido procedimiento de ley que su representado tiene a que se pueda pasar la prueba y que el Tribunal determine si se valida o no que los peticionarios (peticionarios) sean acreedores o no.

La TS Torres indica que no puede recomendar nada en este caso.

Véase, Anejo LVII del Apéndice.
A tales efectos, el Tribunal de Primera Instancia paralizó los procedimientos por 90 días. Se ordenó a las partes informar al foro a quo el resultado de la vista adjudicativa.
Sin embargo, los procedimientos administrativos no pudieron completarse a la fecha prevista. En consecuencia, el Departamento de la Familia presentó una “Solicitud de Desestimación”. En la misma, la agencia señaló que no recomendaban que los peticionarios adoptaran al menor por encontrar con fundamento un referido de maltrato institucional y debido a que los peticionarios no habían permitido que la Unidad de Adopción realizara la investigación correspondiente.
Los peticionarios presentaron debida oposición. Plantearon que la determinación del Departamento de la Familia era una arbitraria y caprichosa.
El 30 de agosto de 2006, notificada el 8 de septiembre de 2006, el Tribunal de Primera Instancia emitió la *751 Sentencia apelada. Mediante la misma, el tribunal a quo declaró Con Lugar la “Solicitud de Desestimación”. Apuntó dicho foro que toda vez que el Departamento de la Familia no daba su consentimiento a que el menor J. D.N. fuera adoptado por los peticionarios, faltaba uno de los requisitos para que pudiera completarse el proceso.
Insatisfechos, los peticionarios presentaron reconsideración, la cual no fue acogida por el foro de instancia.
Inconformes ante esta decisión, los peticionarios recurren ante nos. Sin embargo, y estando el caso ante nuestra consideración, los peticionarios presentaron el 27 de septiembre de 2006, en el pleito JEX 2005-0176, escrito intitulado “Moción en Solicitud de Intervención & Desestimación”. Le informaron al foro a quo del procedimiento en el pleito JEX2004-0151 y le solicitaron la desestimación del caso. A su vez, solicitaron intervenir en el caso ante su consideración.
Insatisfechos, acuden ante nos mediante el recurso KLCE-06-01634. Junto con su escrito instó una “Moción en Auxilio de Jurisdicción”.
Luego de ciertos trámites procesales ante nos, concedimos término al Departamento de la Familia en el KLAN-06-01296, para que presentara su alegato. El término concedido ha transcurrido, procedemos a resolver.
II
KLAN-06-01296
En el recurso KLAN-06-01296, los peticionarios plantean que incidió el Tribunal de Primera Instancia al desestimar la Petición de Adopción incoada sin brindarle el debido proceso de ley que les garantiza tener su día en corte.
KLCE-06-01634
En el recurso KLCE-06-01634, los peticionarios plantean, en esencia, que erró el Tribunal a quo al denegar la “Moción en Solicitud de Intervención & Desestimación” instada.
III
El Art. II, Sec. 7 de la Constitución de Puerto Rico reza, en lo pertinente, que “[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes”.
Sobre el debido proceso de ley, debemos decir que el mismo tiene dos vertientes: la sustantiva y la procesal. Pueblo v. Montero Luciano, res. en 23 de octubre de 2006, 2006 JTS 67; Hernández v. Secretario, res. en 4 de abril de 2005, 2005 JTS 44; Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 273 (1987). El debido proceso de ley procesal toma en cuenta las garantías procesales mínimas que el Estado debe proveerle a un individuo al afectarle su vida, propiedad o libertad. Id., a las págs. 273-274. Al analizar un reclamo constitucional bajo el debido proceso de ley en su aplicabilidad procesal, se hace necesario, primero, determinar si el reclamante tiene un interés individual de vida, libertad o propiedad que deba ser protegido y, segundo, cumplida esta determinación inicial, determinar cuál es el procedimiento exigido, de manera que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. Id., a las págs. 273-274.
El Tribunal Supremo ha señalado que “el debido proceso de ley encarna la esencia de nuestro sistema de justicia. Su prédica comprende los elevados principios y valores que reflejan nuestra vida en sociedad y el grado de civilización alcanzado.” Díaz Rivera v. Secretario de Haciendas Op. De 18 de mayo de 2006, 2006 J.T.S. 94; López Santos v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 112-113 (1996). Reiteradamente *752 hemos establecido que el debido proceso de ley cuenta con dos vertientes: la sustantiva y la procesal. La dimensión sustantiva del debido proceso de ley, persigue salvaguardar los derechos fundamentales de la persona. Por otra parte, la vertiente procesal, el aludido precepto le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que en esencia sea justo, equitativo y de respeto a los individuos afectados. López Vives v. Policía de Puerto Rico, 118 D.P.R. 219, 231 (1987).
Particularmente, para que todo procedimiento cumpla con el debido proceso de ley, en su dimensión procesal, hemos establecido varios requisitos. Entre éstos, están: a) notificación adecuada del proceso; b) proceso ante un juzgador imparcial; c) oportunidad de ser oído; d) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; e) tener asistencia de abogado, y f) que la decisión se base en el expediente del caso. López Santos v. Asociación de Taxis de Cayey, 142 D.P.R. 109, 113-114 (1996); Feliciano Figueroa v. Toste Piñero, 134 D.P.R. 909, 914-915 (1993).
Por otro lado, la adopción es un acto jurídico solemne, el cual supone la ruptura total del vínculo jurídico-familiar de un menor con su parentela biológica, y la consecuente filiación del menor con aquél o aquéllos que han expresado la voluntad de que legalmente sea su hijo. Zapata et al v. Zapata et al, 156 D.P.R. 278 (2002); Virella Archilla v. Proc. Esp. Rel. Fam., 154 D.P.R. 742 (2001); Feliciano Suárez, Ex parte, 117 D.P.R. 402 (1986). Bajo esta institución, se equipara la relación filiatoria adoptiva con aquélla que se produce naturalmente, con iguales deberes y obligaciones jurídicas y sociales.
La adopción, como institución jurídica, cumple varios propósitos. En el aspecto social, tiene el fin de brindarle a los niños sin padres la oportunidad de criarse y educarse como es debido en el seno de un hogar adecuado, mientras que a su vez facilita a aquellas personas que loablemente han optado por acoger a dichos niños como si fueran biológicamente suyos, para atenderlos y brindarles el calor y la estabilidad de una familia funcional. Zapata et al v. Zapata et al, supra; Virella Archilla v. Proc. Esp. Rel. Fam., supra; M.J.C.A., menor v. J.L.E.M., menor, 124 D.P.R. 910 (1989); Feliciano Suárez, Ex parte, supra. Ello, en atención a la problemática social que aqueja a nuestra sociedad de niños abandonados o maltratados dentro de un hogar en el cual se supone que reciban amor, protección y cuidado. Zapata et al v. Zapata et al, supra.
Todo lo antes expresado debe ser alcanzado sin que de ninguna manera se sacrifique el propósito primordial de dicha institución, el bienestar del menor. “Sobre toda consideración, sin embargo, la decisión sobre si se autoriza o no la adopción descansa principalmente sobre la premisa de la conveniencia y el bienestar del menor:’ Ex parte J.A.A., 104 D.P.R. 551 (1976).
La institución de la adopción se rige en el aspecto sustantivo por el Código Civil de Puerto Rico, 31 L.P.R.A. sec. 531 et seq. En su aspecto procesal, está gobernada por el Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2699 et seq. Respecto a la interpretación del conjunto de normas sustantivas y procesales de la adopción, el Tribunal Supremo ha apuntado que las mismas deben ser interpretadas liberalmente a favor del adoptando. Zapata et al v. Zapata et al, supra; Virella Archilla v. Proc. Esp. Rel. Fam., supra, a la pág. 1632; Rivera Coll v. Tribunal Superior, 103 D.P.R. 325, 331 (1975); Ex parte Ortiz y Lluveras, 42 D.P.R. 350, 356 (1931).
En síntesis, las disposiciones sustantivas disponen los requisitos para ser adoptante, la imposibilidad para serlo, quiénes pueden ser adoptados y las personas llamadas a consentir en la adopción, inter alia. Zapata et al v. Zapata et al, supra.
El procedimiento de adopción en Puerto Rico se rige hoy día por la Ley Núm. 9 de 19 de enero de 1995, según enmendada, 32 L.P.R.A. see. 2699 et seq. En su Exposición de Motivos, el legislador declaró como interés apremiante el cuidar y promover celosamente la conservación de la unidad familiar. Señaló que “[e]s un *753 derecho inalienable de los niños el poder vivir y crecer dentro del seno de un hogar feliz y al calor de sus padres. ”
Ante los diversos males sociales que atenían contra el bienestar de los menores, la intención legislativa va dirigida a prestar particular atención a los menores maltratados, abandonados y desamparados, para que mediante los mecanismos de adopción éstos puedan formar parte de hogares estables, donde a su vez encuentren la felicidad, el amor, la protección y el desarrollo físico, psicológico, mental y moral. Exposición de Motivos Ley Núm. 9; Zapata et al v. Zapata et al, supra.
En atención al mejor bienestar del adoptando, el procedimiento de adopción debe ser expedito, flexible y confidencial, para así proteger el derecho constitucional a la intimidad de las partes envueltas. Art. 1 de la Ley Núm. 9, supra, 32 L.P.R.A. sec. 2699. Aun cuando el propósito principal del estatuto es flexibilizar y expeditar el procedimiento de adopción, ello no implica un menoscabo en la intervención del Estado; por el contrario, la Asamblea Legislativa reconoce como principio rector la intervención intensa del Estado para asegurar, en la medida en que sea posible, el bienestar y conveniencia del menor. Zapata et al v. Zapata et al, supra.
La citada Ley Núm. 9 declara como política pública lo siguiente:
TU-

(2) El facilitar en la forma más liberal y amplia posible dentro del esquema jurídico que rige en Puerto Rico los procedimientos de adopción, proveyendo para un procedimiento simple, sencillo y expedito cuyo trámite total no exceda de ciento veinte (120) días desde su inicio hasta su resolución final, además simplificar y liberalizar sustancialmente los requisitos de ley para la emisión de decretos de adopción.

(3) La firme aplicación de este estatuto envuelve un interés social apremiante, de la más alta importancia, considerando la época contemporánea en que por razones evidentemente imputables a padres irresponsables y a otros sectores de la sociedad hay miles de niños maltratados, desamparados, abandonados y sin hogar alguno.

(4)...”.

Surge del texto antes citado que el legislador flexibilizó y agilizó los procedimientos de adopción con el propósito de proveer el mejor bienestar a los menores, de modo que éstos se incorporen a un hogar saludable, evitando en la medida que sea posible exponerlos a mayor sufrimiento y dolor de los que ya albergan en su ser por causa del maltrato, desamparo o abandono al que han sido expuestos. Zapata et al v. Zapata et al, supra.
En el Art. 2 del estatuto se reitera que el procedimiento será expedito y flexible, y que el mismo deberá ser tramitado dentro de un término máximo de ciento veinte (120) días a partir de la petición de adopción. 32 L.P.R.A. sec. 2699a. Al establecer que el procedimiento de adopción será expedito y flexible, denota que el proceso ha de ser desenmarañado o libre de los requerimientos procesales ordinarios que en el pasado dilataban en extremo el decreto de la filiación adoptiva y frustraban a su vez la política pública del Estado de velar por el bienestar de los menores desamparados y abandonados. Zapata et al v. Zapata et al, supra.
Una vez presentada la petición de adopción, se notificará a los padres biológicos o al tutor del menor, cuando éstos no hayan dado su consentimiento en el escrito de petición. 32 L.P.R.A. sec. 2699c(l). Además, tendrá que notificarse al Procurador de Familia (y en su defecto al Director de la Oficina de Investigación y Procesamiento de Asuntos de Menores y Familia del Departamento de Justicia), al Secretario de la Familia y a las personas con las cuales el adoptando haya estado residiendo al momento de presentarse la petición de adopción. 32 L.P.R.A. sec. 2699c[3], Tanto el Procurador de Familia como el Secretario de Familia han de ser *754 notificados para asegurar la intensa intervención del Estado con el propósito de velar por el mejor bienestar del menor. Dado el conocimiento especializado que se reconoce al Secretario de Familia en esta materia, éste alberga la responsabilidad de realizar el estudio social pericial correspondiente y rendir un informe al respecto. íd.
IV
Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia de autos.
En esencia, nos toca decidir si fue correcto el dictamen del Tribunal de Primera Instancia de desestimar la Petición de Adopción instada por los peticionarios. Somos de opinión que nuestra determinación final deberá responder al mejor bienestar del menor. Ese es nuestro norte.
En su escrito, los peticionarios plantean que la actuación del Tribunal de Primera Instancia es una prematura e irrazonable, toda vez el caso de alegado maltrato institucional está sujeta a una determinación de la Junta Adjudicativa del Departamento de la Familia, la cual podría variar la decisión. Arguyen que de mantenerse la determinación del tribunal apelado previo a la determinación de la Junta Adjudicativa crearía un daño irreparable a los peticionarios.
La Núm. 9, supra, requiere una intervención intensa del Estado en el trámite de la adopción. Exposición de Motivos de la Ley Núm. 9, supra. Dicha intervención se hace efectiva mediante la inclusión del Secretario de la Familia y el Procurador de Familia como partes en el procedimiento. En vista del conocimiento especializado del Secretario de la Familia el estatuto requiere que éste realice un estudio social pericial y rinda el informe correspondiente, incluyendo sus recomendaciones respecto a la conveniencia de la adopción. 32 L.P.R.A. sees. 2699c & 2699e. No obstante, dicho informe no obliga al tribunal a actuar conforme a lo expresado en el mismo. 32 L.P.R.A. sec. 2699e(4). Zapata et al v. Zapata et al, supra.
En el caso de autos, reconocemos que la actuación de la agencia ha sido una abusiva y en violación del debido proceso de ley. No obra en autos un Informe Social preparado por la Unidad de Adopción del Departamento de la Familia que avale la determinación de la agencia. A contrario sensu, surge de autos que la Unidad de Adopción, tan cercano como el 13 de marzo de 2006, apuntó que la posición de la entidad no era final, ya que podría ser cambiada luego de la vista a ser celebrada por la Junta Adjudicativa. Planteó que, ante lo anterior, la Unidad de Adopciones no podía tomar una determinación final. A la luz de lo antes expuestos, y desde el punto de vista procesal, entendemos que era prematura la desestimación solicitada por el Departamento de la Familia. Sin embargo, lo expresado no significa que podamos hacer abstracción del bienestar del menor envuelto.
Recordamos a los peticionarios que la intención de la Ley Núm. 9, supra, va dirigida a proteger el bienestar del menor, aun cuando ocasione “daños irreparables” a los padres biológicos, adoptantes, entre otras partes. Observamos que en el caso de autos, el menor fue removido del hogar de los peticionarios el 23 de noviembre de 2004, siendo colocado en otro hogar. Durante los pasados 2 años, el menor que ya cuenta con 4 años, ha convivido en otro entorno familiar, que desea adoptar al menor. A su vez, el menor no ha tenido contacto alguno con los peticionarios durante este tiempo. Surge del expediente, un Informe de Ajuste del 2004, donde se apunta que el menor había hecho un ajuste excelente. Entendemos que el panorama actual es el adecuado y cónsono al mejor bienestar del menor en su desarrollo físico, intelectual y emocional. Desarraigar al menor de su entorno actual podría crearle inestabilidad al menor y convertirlo en una víctima de las actuaciones desatinadas de una agencia de gobierno.
En síntesis, tomando como norte el mejor bienestar del menor, el balance más racional y justiciero valida la actuación del Tribunal de Primera Instancia de desestimar la Petición de Adopción presentada. 
*755 En el recurso KLCE-06-01634, los peticionarios alegan que incidió el Tribunal de Primera Instancia al denegar la “Moción en Solicitud de Intervención & Desestimación” presentada. Apuntan que la Petición de Adopción incoada en el JEX-2005-0176 es una improcedente, toda vez que existía una Orden del Tribunal de Primera Instancia que impedía el curso de cualquier petición. Los peticionarios olvidan que, en esta etapa, su Petición de Desestimación fue desestimada, lo que deja sin efecto cualquier Orden emitida. O sea, su ruego, en esta etapa, es académico.
En cuanto a la intervención solicitada por los peticionarios, somos de opinión que no les asiste la razón. La propia Ley Núm. 9, supra, dispone de manera meridiana las partes que tienen derecho a intervenir en pleito de adopción. A tenor de lo dispuesto en el estatuto, los peticionarios no tienen derecho alguno a intervenir en el pleito.
Debemos reiterar que nuestra actuación descansa, exclusivamente, en lo que consideramos es el mejor bienestar del menor en el ejercicio de nuestro poder de parens patriae. Es por ello que cualquier conflicto que un tribunal perciba entre intereses ajenos y el mejor interés de un menor deberá resolverse a favor del menor. Cf. Ortiz García v. Meléndez Lugo, Op. el 3 de marzo de 2005, 2005 J.T.S. 25.
V
Por las razones antes esbozadas, se confirma la Sentencia apelada del recurso KLAN-06-01296. Se deniega la expedición del auto de certiorari solicitado en el KLCE-06-01634, así como la “Moción en Auxilio de Jurisdicción”.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria Interina del Tribunal de Apelaciones.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 15
1. El recurso presentado resulta inexacto. A tenor con lo dispuesto en la Regla 53.1(e) de las de Procedimiento Civil, 32 L. P.R.A. Ap. Ill, R. 53, el vehículo procesal adecuado es el certiorari. Así lo acogemos.
2. Contrario a lo ordenado en nuestro Reglamento, los peticionarios, al presentar el recurso KLCE-06-01634 no informaron a este Foro del recurso KLAN-06-01296. Véase, Reglas 26 y 34 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B R. 26, R. 34.
3. La carta lee:

“Saludos.

Me place informarles que se completó el Estudio Social de su solicitud para ser evaluados como candidatos a padres adoptivos, siendo recomendados favorablemente.

Sus nombres aparecerán en el listado de personas elegibles como candidatos a adoptar a un niño(a) cuando tengamos un menor candidato a adopción se lo dejaremos saber.

Agradeceremos que de surgir algún cambio en su disponibilidad para aceptar a un niño(a) en adopción o en la información ofrecida por ustedes en cuanto a vivienda, trabajo, grupo familiar, salud entre otros, nos informe con la mayor brevedad posible para de esta manera poder actualizar su expediente.

Hilda L. Torres

Trabajadora Social

*756
Unidad de Adopción

Oficina Regional Ponce”

4. Dicho caso fue paralizado hasta que se resolviera el pleito de epígrafe.
5. Ello no quiere decir que los apelantes no pueden contar con un remedio en daños y perjuicios contra la agencia, lo que posiblemente dependerá del resultado del procedimiento ante la Junta Adjudicativa. Pero, por las rezones que hemos expresado, no entendemos que el remedio apropiado en esta etapa puede ser la devolución del menor, lo que podría afectar adversamente a éste.